**In re TOWNCO REALTY, INC., Debtor.**

**Bankruptcy No. 87–00324–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 16, 1987.

Blackwell, Walker, Fascell and Hoehl, Patrick S. Scott, Ft. Lauderdale, Fla., for debtor.

## ORDER DENYING CONFIRMATION AND DISMISSING CASE

THOMAS C. BRITTON, Chief Judge.

Thirty-four days after the hearing held October 20 to consider confirmation of this debtor's modified chapter 11 plan, filed October 15 (C.P. No. 31a) and while the matter was under advisement, the debtor moved (C.P. No. 39a) for consideration of a ballot tendered with the motion or, alternatively, for cram down under 11 U.S.C. § 1129(b). The voting deadline, which had been set 74 days before the hearing, was October 20. The debtor's motion was heard December 15.

For the reasons detailed below, the motion is denied; confirmation is denied; the fee applications are denied without prejudice; and this case is dismissed with prejudice to the filing of any bankruptcy petition by this debtor earlier than two years after this Order becomes final.

The debtor's only asset is a shopping center in Manchester, Georgia, and its only activity is the management of that proper-ty. It has six creditors. Its mortgagee, to whom it owes over $2.2 million (C.P. No. 31b, p. 5), which is 99.9% of its total debt (C.P. No. 38), orally accepted the modified plan at the confirmation hearing. None of the remaining five unsecured creditors voted on the plan.

### Failure To Vote Is Not Acceptance

■ The debtor assumes (C.P. No. 37) that the failure to vote constitutes acceptance of the plan. That is not the case. There is no predicate in the statute or the rules for this conclusion. Bankruptcy Rule 3018(c) provides to the contrary:

"An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to Official Form No. 30."

As contrasted with § 1111(a) which provides that claims are "deemed filed" if scheduled by the debtor unless disputed, contingent or unliquidated, there is no provision deeming a failure to vote as constituting acceptance.

Section 1126(c) provides that a class has accepted a plan if the plan "has been accepted" by the requisite number and amount of the claims in the class. The Senate Committee note to this subsection included the following explanation:

"Subsection (c) specifies the required amount and number of acceptances for a class of creditors. A class of creditors has accepted a plan if at least two-thirds in amount and more than one-half in number of the allowed claims of the class *that are voted are cast in favor of the plan.* The amount and number are computed on the *basis of claims actually voted for or against the plan,* not as under chapter X [former section 501 et seq. of this title] on the basis of the allowed claims in the class." (Emphasis added.) S.Rep. No. 95–989, 95th Cong.2d Sess. 123 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5909.

### Ballot Filed After Voting Deadline Cannot Be Counted

■ The ballot accepting the plan, tendered more than a month after the balloting deadline, is by an unsecured creditor, a management company controlled by this debtor's principal (C.P. No. 31b, p. 2), with a claim of $536. It is not suggested that this creditor had no notice of the election, that it had been prevented from voting before the deadline, or that a timely ballot has been misplaced. In addition, under § 1129(a)(10), the acceptance by an impaired class is determined *without* including an insider acceptance. § 101(30)(C).

The consideration of ballots cast *after* an election is the very antithesis of a democratic election. It is no more permissible here than in any other election.

■ The debtor argues that the ballot of the secured creditor was accepted by the U.S. Trustee as a valid acceptance (C.P. No. 39) though it, too, was filed after the balloting deadline (C.P. No. 37). That creditor's vote, however, was announced at the confirmation hearing *before* the deadline (C.P. No. 37) and, therefore, for the purposes of this order I accept the U.S. Trustee's certificate. If, however, that vote is indistinguishable from the vote now tendered by the debtor, that vote is also invalid and *no* class has accepted the debtor's plan, itself a fatal flaw. § 1129(a)(10).

### Confirmation Denied Under § 1129(a)(8)

■ This subsection requires that each class impaired under the plan must have accepted the plan. The debtor concedes that class 4, the unsecured creditors, is impaired under the plan. (C.P. No. 39a, ¶ 3). Since, as has already been noted, no class 4 creditor accepted the plan, confirmation must be denied under this subsection.

### Confirmation Denied Under § 1129(a)(11)

■ This subsection requires a finding by this court that:

"Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor...."

Such a finding is not justified here.

Section 1123(a)(5) requires that a plan "shall provide adequate means for the plan's implementation." The only means provided in this plan are future earnings. By its own valuation, this debtor's debts exceed its assets by $359,574 or 19%.

The debtor has operated its shopping center since July 1982. It was unable to carry its existing debt and in 1986 defaulted on its mortgage. (C.P. No. 31b). It filed for bankruptcy on February 3 of this year to stay a pending foreclosure. It proposes to continue its operations under the same management. There is no plausible reason to conclude that its future operations will be more successful than its past failure to meet its debt.

Its projected cash flow (C.P. No. 31b) estimates monthly income from all sources of $17,154 with a net cash surplus of $440 (2.6%) as of July 1, 1987. Its bi-weekly reports to this court show, however, that for the four months ending October 31, it failed to meet this projection in three months and has averaged 5% under its projection for the entire first four months.

This pro forma projection allocates only $720 (³/₁₀ths of 1%) of its revenue for general repairs, an unrealistic estimate. It allocates 21% of its revenue for its other administrative expenses. I believe that the debtor's principal is directly or indirectly benefiting unreasonably from this continued operation.

The debtor's principal, Harry Schreiber, is also the principal in at least 12 other similar bankruptcies filed about the same time in this court. Of course, each case must be judged on its individual merits and I am not personally responsible for or familiar with all these cases, but this record certainly does not vouch for management's judgment, skill or probable success.

Management's projections depend in the last analysis on management's reliability. One indication of a debtor's reliability is its willingness and ability to meet its procedur-

al obligations in this court. This debtor did not file its schedules until 16 days after the 15-day grace period permitted by B.R. 1007(c).

It did not comply with the requirement in § 1106(a)(5):

"as soon as practicable, file a plan under section 1121 ... [or] file a report why ... [it] will not file a plan." (The debtor is required by § 1107(a) to perform the foregoing duty.)

No plan was filed until this court ordered the debtor to do so (C.P. No. 20). It then did so one day before the deadline, six months after it filed for bankruptcy.

As has been noted, this debtor failed to get one single timely vote for its plan.

Though several of the foregoing considerations standing alone might not necessarily destroy confidence in this debtor's prospects under its existing management, taken collectively and in the absence of any overriding considerations, it would be irresponsible for me in this case to make the finding required by § 1129(a)(11).

### Denial of Cram Down

■ In possible recognition that its plan is not entitled to confirmation, this debtor has requested cram down under § 1129(b). It first made this request over a month after the confirmation hearing. Neither the statute nor the rules provide a deadline for such a request, but both due process considerations and common sense suggest that such a request must be made before or at the confirmation hearing.

■ Local Bankruptcy Rule 10 provides: "Whenever a party is authorized by statute or rule to file a motion, application or other pleading in or in connection with a bankruptcy case or proceeding and no time is specified for the pleading to be filed, it shall be filed within 10 days after the event that precipitated the pleading."

If resort to this Local Rule is necessary, the event that precipitated the request for cram down was the rejection of the plan by class 4, which occurred when no creditor in that class accepted the plan by the voting deadline, 34 days before this request was first made.

■ If the debtor's request for cram down is timely, cram down is only applicable where the debtor's plan meets all the requirements of § 1129(a) except subparagraph (8). § 1129(b)(1). However, this plan also fails to meet the requirement of subparagraph (11). Therefore, cram down is simply not available here.

### Dismissal

■ If the debtor's motion may be construed to be an application for additional time to file another plan in the event of the failure of this revised plan, that application is denied. Chapter 11 does not guarantee a debtor's survival, merely an opportunity to attempt resolution of its financial problems. This debtor has had an ample opportunity to cope with its six creditors and has failed to do so.

This case is dismissed under § 1112(b)(5). Section 105(a) as amended last year now permits sua sponte dismissal.

It should be noted that the debtor has represented to the U.S. Trustee that this is a "consensual plan". (C.P. No. 43). I do not believe this to be so. Only two of the six creditors appear to have consented to this plan. But if counsel is to be believed and if *all* creditors now agree to the plan, there is no reason for this case to stay here and the continuing expense of this case alone is a compelling argument for its immediate dismissal.

### Fee Application

■ The application (C.P. No. 29) of the debtor's attorney for approval of its fee was before the court at the confirmation hearing. Counsel, who received a $3,000 retainer, request approval of a total fee of $8,000 and $1,000 for expenses, less the $500 deposit it received. Both the fee and expenses anticipate confirmation of the plan and resulting additional duties and expenses. Under the circumstances and in view of the dismissal of this case, the application need not be considered here and is denied without prejudice to this counsel receiving any additional compensation it is

entitled to from its client. This court no longer need concern itself with the reasonableness of the request and any questions can be readily resolved in the State court.

As is frequently the case in this court, no adverse party has incurred (or could reasonably afford to incur) the expense to oppose the debtor. This court cannot let that fact excuse it from reaching the same result it should reach had this case been defended by the affected non-assenting creditors. In doing so, I have frustrated the debtor's wishes. An appeal by the debtor could be completely unopposed.[1] A reviewing court is always entitled to an explanation of this court's decisions. This Order has been unduly extended for that reason alone, though time is woefully short in this court (as it is, unfortunately, in most courts).

---

1. The U.S. Trustee shares the court's duty and responsibility and, I hope, would discharge that duty. However, the U.S. Trustee was first installed in this District three months ago and is still coping with myriad organizational problems of staffing and training. It would neither be fair nor reasonable for me to rely completely upon his office at this time.