In re M. LONG ARABIANS, Debtor.

BELL ROAD INVESTMENT
COMPANY, Appellant,

v.

M. LONG ARABIANS, Appellee.

BAP No. AZ–88–1530–RMeAs.
Bankruptcy No. 85–03039 PHX RGM.

United States Bankruptcy Appellate Panel,
of the Ninth Circuit.

Argued and Submitted Feb. 14, 1989.

Decided Aug. 21, 1989.

Chad L. Schexnayder, Jennings, Kepner & Haug, Phoenix, Ariz., for appellant.

Amil J. Ajamie, Phoenix, Ariz., for appellee.

Before RUSSELL, MEYERS and ASHLAND, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

Bell Road Investment Company ("Bell Road") appeals the bankruptcy court's order confirming the debtor's plan. Bell Road, the sole secured claim holder in one class of claims and one of several unsecured claim holders in another class, voted to reject the plan. However, Bell Road did not seek temporary allowance of claims after the debtor previously had challenged its claims. The bankruptcy court held that Bell Road was not allowed to vote and concluded, therefore, that all classes voted to accept the plan. We reverse and remand.

## FACTS

M. Long Arabians (debtor), an Arizona limited partnership, initially engaged in the business of breeding, raising, training and selling Arabian horses. Michael A. Long was the general partner, and the limited partners were Charles Muelbauer, MWB Investment Company, and Bell Road Investment Company ("Bell Road") (appellant). The debtor's business was formed on January 30, 1981, and operated successfully for approximately one year, until the debtor experienced cash flow problems. Bell Road injected additional capital into the partnership and thereafter assumed a more active role in the operation of the business.

Based upon Bell Road's commitment of additional funds, the debtor incurred numerous obligations for the purchase of horses, land, structures, and improvements. In July, 1982, after receiving an additional $50,000 from Bell Road, the debtor gave Bell Road a Note and Deed of Trust in the amount of $482,000 to secure money previously advanced by Bell Road. Thereafter,

the relationship between Mr. Long and Bell Road deteriorated and Bell Road refused to provide any additional funds to the partnership. As a result, the partnership was unable to satisfy its obligations.

The debtor instituted a lawsuit against Bell Road in 1983 for fraud and rescission of the Deed of Trust it had previously given Bell Road.[1] At the same time, the debtor was forced to defend suits against it by suppliers seeking to collect on outstanding obligations. The debtor was forced to curtail its business and has continued to function only as a training and boarding operation.

On December 7, 1985, creditors Bell Road, R.J. Marlowe Co., and Storey & Ross filed an involuntary Chapter 7 petition against the debtor. The debtor filed a motion to dismiss, claiming that the creditors' claims were subject to *bona fide* disputes. The motion to dismiss was subsequently withdrawn and, upon application of the debtor, the bankruptcy court entered an order on September 9, 1986, converting the case to Chapter 11.

The debtor's only significant asset at the time the original petition was filed was a nine acre parcel of land (the "property") located in Phoenix, Arizona. The secured claims against the property totalled $2,293,-580. After conversion to Chapter 11, the debtor filed a motion to sell the property free and clear of liens on April 16, 1987. On May 27, 1987, the bankruptcy court rejected this motion as a disguised plan. The property was ultimately sold to Talley Realty Development, Inc. ("Talley") for $2,163,000, pursuant to the confirmed plan ("Plan")

On July 24, 1987, the debtor filed its first disclosure statement. After numerous objections by creditors and amendments by the debtor, the court entered its order approving the disclosure statement on February 10, 1988. The court fixed March 25, 1988, as the last day for filing written acceptances or rejections of the debtor's Plan.

The debtor's Plan provided for the sale of the nine acre property to Talley for $2,163,000, paid over time and according to the terms and conditions of the Purchase Agreement. The property was to be sold free and clear of any liens by secured creditors, who would be provided with undivided interests in the Note and Deed of Trust securing Talley's obligations under the sale agreement. The Plan also provided that all of the estate's general administration expenses were to be paid out of the $2,163,-000 received from the sale of the property and that there were no limitations on the amounts used to pay general administration expenses and other priority claims.

The Plan set forth numerous classes of creditors. The secured claimants were placed in classes denominated by the letters A through W. Unsecured claimants were placed in Class X. Certain classes were granted replacement liens in the remaining proceeds from the sale of the property after all administrative expenses and priority claims had been paid. Classes involving disputed claims were to be treated as unsecured claims in Class X and were not granted replacement liens in the remaining sale proceeds. However, a claimant would be given a replacement lien if it successfully prevailed in the adversary proceeding brought by the debtor. Only Class A claims were deemed unimpaired.

Bell Road's secured claim of approximately $486,000 in principal was the only designated Class C claim in the debtor's Plan. Bell Road also held an unsecured claim in Class X for $542,166. Bell Road voted to reject the Plan under both Class C and Class X, and argues, therefore, that Class C voted to reject the Plan and that only 47.98% of the claims voting in Class X voted in favor of the Plan.

On March 28, 1988, Bell Road filed its objection to confirmation. It claimed that the debtor's Plan did not meet the requirements of Bankruptcy Code Section 1129(a)(8) because classes of creditors who were impaired had not accepted the Plan. Therefore, it argued that the Plan could not be confirmed because it did not comply

---

**1.** This lawsuit eventually was dismissed for lack    of prosecution.

with the "cram down" provisions of Section 1129(b). Bell Road additionally argued that the debtor's Plan did not meet the "best interests" test under Section 1129(a)(7)(A)(ii) because the debtor could not demonstrate that creditors would not receive less than they would have received under a Chapter 7 liquidation.

The confirmation hearing was held on April 1, 1988. Bell Road asserted its previous arguments. The debtor responded by arguing that neither the "cram down" nor the "best interests" issue was relevant because Bell Road was deemed to have legally "accepted" the Plan.

The bankruptcy court issued its opinion and order confirming the debtor's Plan on April 15, 1988. The court held that Bell Road did not have an allowed claim under Section 502(a) and Section 1126(a) because the debtor had objected to Bell Road's claim and had filed an adversary complaint to avoid the lien and for declaratory judgment against Bell Road. The court indicated that since Bell Road did not seek temporary allowance of its claim, pursuant to Bankruptcy Rule 3018(a)(2), prior to the confirmation hearing, Bell Road's claim was deemed not allowed under Section 502(a). Therefore, Bell Road's claim was disallowed for purposes of voting on the debtor's Plan. The court, thus, overruled Bell Road's objection and found that the Plan conformed with the requirements of Section 1129(a)(7) and (8) in that each class had voted to accept the Plan.

Bell Road filed its Notice of Appeal on April 20, 1988.

## ISSUE

Whether the bankruptcy court erred when it confirmed the debtor's Plan.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed *de novo. Wien Air Alaska, Inc., v. Bachner,* 865 F.2d 1106, 1108 (9th Cir. 1989); Bankruptcy Rule 8013. "A finding is clearly erroneous if, after a review of the record, the appellate panel is left with a firm and definite conviction that error has been committed." *In re Burkhart,* 84 B.R. 658, 660 (9th Cir. BAP 1988).

## DISCUSSION

### A. *Acceptance of the Plan*

Bankruptcy Code Section 1129 lists the requisite conditions in order for the bankruptcy court to confirm the debtor's Plan. Section 1129(a)(8) deals with acceptance of the Plan and provides that:

(a) The court shall confirm a plan only if all of the following requirements are met:

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

#### 1. Impairment

A debtor's plan is required to specify which classes are unimpaired. 11 U.S.C. § 1123(a)(2). The plan also is required to specify the treatment of impaired classes. 11 U.S.C. § 1123(a)(3). Whether a claimant is "impaired" is determined pursuant to Section 1124. A class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan: (1) leaves unaltered the legal, equitable and contractual rights to which the claim or interest holder is entitled (11 U.S.C. § 1124(1)); (2) reinstates a claim or interest and thus leaves it unimpaired (11 U.S.C. § 1124(2)); or (3) provides for the claim holder to receive on the effective date of the plan cash equal to the allowed amount of the claim (11 U.S.C. § 1124(3)).

In the present case, the debtor's Plan provides the following regarding impairment of classes:

4.01. The following class is unimpaired under the plan: Class A.

4.02. All other classes are impaired under the Plan.

The record clearly demonstrates that Bell Road's Class C and Class X claims are

impaired under the Plan. Additionally, Bell Road's claims are impaired because the Plan does not leave unaltered Bell Road's legal, equitable and contractual rights and because cash payments are not provided for Bell Road on the effective date of the Plan. Since Bell Road's claims in Class C and Class X are impaired, each class needed to vote to accept the Plan in order for the Plan to comply with Section 1129(a)(8).

### 2. Acceptance

The bankruptcy court held that Bell Road did not have an allowed claim under Section 1126(a) because the debtor objected to Bell Road's claims and filed an adversary complaint to avoid the liens. Since Bell Road did not seek temporary allowance of its claims, pursuant to Bankruptcy Rule 3018,[2] prior to the confirmation hearing, the court held that Bell Road's claims were not allowed for purposes of voting on the Plan.

■ Bell Road asserts that it voted its Class C and Class X claims to reject the Plan. We disagree. Section 1126(a) provides that only a "holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." Section 502(a) provides that a claim is "deemed allowed, unless a party in interest ... objects." Accordingly, until a party is deemed to have an "allowed" claim, or actually has an allowed claim, it has no right to accept or reject a plan. See In re Orosco, 77 B.R. 246, 249 (Bankr.N.D.Cal.1987), aff'd, 93 B.R. 203 (9th Cir. BAP 1988); Matter of Gardinier, Inc., 55 B.R. 601, 604 (Bankr.M.D.Fla.1985).

■ In the instant case, the debtor objected to Bell Road's claims by filing a complaint for Avoidance of Lien and Declaratory Judgment against Bell Road. Bell Road could not have voted on the Plan

unless it sought a timely allowance of its claims under Bankruptcy Rule 3018.[3] Bell Road, however, assumed that its claims had been fully allowed and did not seek temporary allowance of its claims in order to vote on the Plan. Therefore, we agree with the bankruptcy court's finding that Bell Road's Class C and Class X votes should not be considered in determining whether Class C and Class X voted to accept the Plan.

### Class C—

■ Bell Road, as the sole Class C secured claim holder, was not allowed to vote to accept or reject the Plan. However, the failure or inability of a creditor to vote on confirmation of a plan is not equivalent to acceptance of the plan. See In re Townco Realty, Inc., 81 B.R. 707, 708 (Bankr.S.D. Fla.1987). But see In re Campbell, 89 B.R. 187 (Bankr.N.D.Fla.1988).

Although not cited by either side, In re Ruti–Sweetwater, Inc., 836 F.2d 1263 (10th Cir.1988), deserves some comment. In that case, the Tenth Circuit held that the nonvoting, nonobjecting judgment lien creditor, who was the only member in its class, was "deemed" to have accepted the plan. It is clear that the crucial factor in Ruti–Sweetwater was that the creditor failed to object to the plan, thereby "waiving" its right to challenge the plan. Since Bell Road attempted to reject the Plan and, in fact, objected to the Plan, Ruti–Sweetwater is clearly distinguishable. Furthermore, we decline to follow Ruti–Sweetwater to the extent that it holds that a creditor is "deemed" to have accepted the plan. The bankruptcy court, therefore erroneously assumed that a failure to vote constituted an acceptance of the plan.

■ A class has accepted a plan if the plan "has been accepted" by the requisite

---

**2.** Bankruptcy Rule 3018(a), which deals with persons entitled to accept or reject the plan, provides, in pertinent part, that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting the plan."

**3.** Such determination could have been sought by other parties in interest, such as the debtor. Unless a situation exists such as applies to Bell Road in this case, a creditor need not seek allowance for voting purposes.

number and amount of the claims in the class. *Townco Realty*, 81 B.R. at 708. The holder of a claim must affirmatively accept the plan. 11 U.S.C. § 1126(c). Since Bell Road, the only Class C claim holder, did not vote affirmatively to accept the debtor's Plan (since Bell Road failed to obtain a temporary allowance of its claim), Class C could not have voted to accept the Plan. Therefore, the bankruptcy court erred in holding that Class C accepted the Plan.

### Class X—

Bell Road, holding a general unsecured claim in Class X for $542,166, voted to reject the Plan. As discussed, *supra*, Bell Road did not have the right to vote on the Plan because it did not seek temporary allowance of its disputed claims under Bankruptcy Rule 3018. Therefore, in order to determine whether Class X voted to accept the Plan, we cannot consider Bell Road's vote and instead must look at how the other unsecured creditors in Class X voted.

■ According to the Amended Ballot Tabulation, only three Class X claim holders cast ballots to accept the Plan. Creditor Long voted $350,000, creditor Rayes voted $150,000 and creditor Bradford voted $80,000, for a total of $580,000. Bell Road contends that Bradford's acceptance was not timely filed and therefore should not be counted. Regardless of whether Bradford's vote is considered, all of the unsecured creditors who voted in Class X voted in favor of the Plan. Thus, one hundred percent of the amount of claims voting in Class X also voted to accept the Plan. Therefore, we find that the bankruptcy court properly held that Class X voted to accept the Plan because all claim holders who voted in Class X voted in favor of the Plan.

### B. *"Best Interests" Test*

Section 1129(a)(7) is commonly referred to as the "best interests of creditors" test. It provides, in pertinent part:

(a) The court shall confirm a plan only if all of the following requirements are met:

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor liquidated under chapter 7 of this title on such date; . . . .

We have already determined that Class C, an impaired class whose sole claim holder is Bell Road, did not vote to accept the Plan. We also have determined that Class X, an impaired class, did vote to accept the Plan. However, Bell Road did not vote to accept the plan in either Class C or Class X. Therefore, it is necessary to apply Section 1129(a)(7)(A)(ii) in order to determine whether Bell Road would retain or receive under the Plan what it would receive under a Chapter 7 liquidation.

Section 723(a) provides for the rights and duties of a Chapter 7 trustee as regards what a claim holder would be entitled to recover against a general partnership in a Chapter 7 case. This Code section provides that:

[i]f there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

Although the remedy provided under Section 723(a) is not available to a debtor in possession in a Chapter 11 case, *see* 11 U.S.C. § 1103(b), it nevertheless is a helpful guide in determining what a claim holder would receive under a Chapter 7 liquidation.

In order to properly apply the "best interests" test and determine the amounts

Bell Road would receive on its claims in a Chapter 7 liquidation, additional information is needed regarding the ability of its general partner Michael Long to contribute assets to the estate. Such information is necessary because the existence of a solvent general partner would make the Chapter 7 liquidation more favorable to the secured or unsecured claim holder (i.e., Bell Road) and thus enable the debtor's plan to pass the "best interests" test.

Courts have recognized the necessity of the financial disclosure of assets of a general partner in determining whether the best interest test has been satisfied. The court in *In re Monetary Group*, 55 B.R. 297 (Bankr.M.D.Fla.1985), stated that:

> Bankruptcy Rule 1007(g) authorizes the Court to require general partners of a partnership debtor to file statements of personal assets and liabilities. Although this rule implements § 723 of the Bankruptcy Code, it is not limited to that singular purpose. The information contained in a statement of personal assets and liabilities filed by each general partner of a Chapter 11 partnership debtor would also help the court determine whether the plan complies with 11 U.S.C. § 1129. The "best interests of creditors" test requires the Court to find that each impaired class of claims or interests will receive more under the Chapter 11 plan than they would in a Chapter 7 liquidation. *See* 11 U.S.C. § 1129(a)(7)(A)(ii). Section 723 would be available to a trustee or debtor in possession in a Chapter 7 case. *Therefore, if the general partners were solvent and could satisfy any deficiency in the payment of debts of the partnership, then the Chapter 11 plan could not be confirmed unless the plan provided for a 100% payout to all creditors* (emphasis added).

*Id.* at 299. Other courts have indicated that "[i]t is necessary for the Court to determine the net worth of each of the partners of the partnership, in order to determine whether a plan can be confirmed under § 1129(a)(7) of the Bankruptcy Code." *In re I–37 Gulf Limited Partnership*, 48 B.R. 647, 650 (Bankr.S.D.Tex. 1985).

Although Michael Long submitted an affidavit to the bankruptcy court in respect to his personal assets, such did not comply with Bankruptcy Rule 1007(g) because it was not a complete financial disclosure "in the form and manner provided for individual debtors in a Chapter 11 proceeding." *I–37 Gulf*, 48 B.R. at 650. The statement also was not submitted until April 11, 1988, ten days *after* the confirmation hearing and four days prior to the entering of the bankruptcy court's order and opinion. Although Bell Road was not given an opportunity to evaluate or challenge Michael Long's statement, the affidavit nevertheless reveals that Michael Long possessed assets of notable worth and value and that he would be able to make some, if not substantial, contributions if this were a Chapter 7 case.

■ Bell Road, as sole holder of the Class C claim and as a Class X claim holder does not appear to receive or retain under the Plan an amount "not less than" what it would expect to receive on its claims in a Chapter 7 liquidation. In order to have properly applied the "best interests of creditors" test under Section 1129(a)(7)(A)(ii), the bankruptcy court should have required Michael Long, as general partner of the debtor, to file a statement of assets and liabilities in conformance with Bankruptcy Rule 1007(g) prior to the confirmation hearing. Without this information, the court did not have a proper factual basis to make an informed decision when it entered its order confirming the Plan and finding compliance with Section 1129(a)(7). Therefore, since the bankruptcy court never addressed the "best interests" test when it confirmed the plan, we remand this matter to determine if Bell Road would receive at least what it would under a Chapter 7 liquidation. In reviewing this matter, we recommend that the bankruptcy court request a detailed statement of assets and liabilities of Michael Long.

### C. *"Cram Down"*

If a plan meets all of the requirements of Section 1129(a), except for subsection (a)(8),

then it still may be confirmed if the so-called "cram down" provisions of Section 1129(b) are satisfied. Under "cram down," confirmation may occur only if the plan is shown to be "fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). The conditions for "cram down" of secured claims are set forth in Section 1129(b)(2)(A), and those for unsecured claims are set forth in Section 1129(b)(2)(B). If "cram down" is required and its provisions are not met, then the court cannot confirm the plan.

In the instant case, the bankruptcy court never addressed the issue of "cram down" because it concluded that all classes of claims voted to accept the Plan and that Section 1129(a)(8), therefore, had been satisfied. Section 1129(a)(8), however, was not satisfied because Class C did not vote to accept the debtor's Plan. Therefore, this matter must be remanded to the bankruptcy court for a determination of whether the debtor's Plan complies with the "cram down" requirements of Section 1129(b).

## CONCLUSION

Bell Road's Class C secured claim and its Class X unsecured claim were challenged by the debtor. Because Bell Road did not seek temporary allowance of its claims, it was not eligible to vote on the Plan. Accordingly, Class C, consisting solely of Bell Road's secured claim, did not vote to accept the debtor's Plan. Since all impaired classes of claims did not accept the Plan, we reverse the decision of the bankruptcy court and remand this matter to the court for a determination as to whether the debtor's Plan can be confirmed under the "cram down" provisions of Section 1129(b) and whether it satisfies the "best interests" test of Section 1129(a)(7).

REVERSED and REMANDED.