In re ADKISSON VILLAGE APARTMENTS OF BRADLEY COUNTY, LTD., Debtor.

Bankruptcy No. 2–90–02227.

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 4, 1991.

John Andrew Merkle, Denmead, Blackburn & Brown, Columbus, Ohio, for debtor.

Drew T. Parobek, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for American Charter Federal Sav. and Loan Ass'n.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, for trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of the U.S. Trustee for Region IX.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen, P.C., Southfield, Mich., Sp. Counsel to the Trustee of the Consolidated Estate.

James Bownas, Legal Counsel, Cardinal Industries, Inc., Columbus, Ohio.

## OPINION AND ORDER ON REQUEST FOR CONFIRMATION OF CHAPTER 11 PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court on the requested confirmation of an amended plan of reorganization ("Plan") proposed by Chapter 11 debtor, Adkisson Village Apartments of Bradley County, Ltd. ("Adkisson Village"). No objections were filed to confirmation. The Court has an independent duty to find that all elements for confirmation have been met, however, and may confirm a plan only if all those requirements, as set forth in 11 U.S.C. § 1129(a) ("§ 1129(a)"), have been satisfied.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district.

This is a core proceeding which this bankruptcy judge may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(L).

## II. *Facts and Procedural History*

Adkisson Village, a limited partnership, is the owner of real property in Bradley County, Tennessee, upon which an apartment complex has been constructed. Since April 2, 1990, Adkisson Village has been operating under the provisions of Chapter 11. On June 19, 1991 the Court approved Adkisson Village's amended disclosure statement and on September 10, 1991 the Court held a confirmation hearing on the proposed Plan.

American Charter Federal Savings and Loan Association ("American Charter"), the major secured lender of Adkisson Village[1], participated at the hearing in support of the Plan. The only impaired class under the Plan which did not cast any votes is Class VI, composed of tenants holding claims for pre-petition security deposits. The Plan proposes to pay each Class VI claimant the full amount of its allowed claim on the later of 60 days after the effective date of the Plan or "when any class claimant is otherwise entitled to payment pursuant to any apartment lease." The remaining classes accepted the Plan in accordance with 11 U.S.C. § 1126(c). Both Adkisson Village and American Charter urge the Court to adopt the view that, under the facts of this case, Class VI shall be deemed to accept the Plan and thereby satisfy the requirements of 11 U.S.C. § 1129(a)(8).

Adkisson Village presented testimony of a representative of its general partner, Cardinal Industries, Inc. ("CII"). That testimony was intended to demonstrate that the Plan is feasible and satisfies the "best interests of creditors" test as set forth in 11 U.S.C. § 1129(a)(11) and § 1129(a)(7). Although the Plan called for the infusion of $70,000 in capital contributions from the debtor's nine limited partners, only $2,000 was received.[2] Despite this lack of additional capital, Adkisson Village contends that the Plan is nevertheless feasible. CII has agreed to loan Adkisson Village $15,000 in order to ensure that the Plan's payments required within 60 days of the effective date can be met.[3] Adkisson Village has filed a modification to the Plan which reflects this agreement.

For the reasons which follow, the Court finds that the requirements of § 1129(a)(8) have not been met. The Court further finds, however, that if the loan by CII is approved and available, Adkisson Village has satisfied the remaining provisions of § 1129(a).

## III. *Issues Presented For Decision*

1. What alternative does a plan proponent have when no votes are cast by any member of an impaired class of tenants with unsecured claims for pre-petition security deposits?

2. Has Adkisson Village met the remaining requirements for confirmation imposed by 11 U.S.C. § 1129(a)?

## IV. *Discussion And Conclusions Of Law*

### A. Acceptance By An Impaired Class Pursuant To 11 U.S.C. § 1129(a)(8)

The provisions of § 1129(a) of the Bankruptcy Code are mandatory and the Court must find that all have been met prior to confirming a proposed plan of reorganization. One such provision requires that all classes of claims or interests either accept the proposed plan, be unimpaired under the plan, or be treated properly under the "cramdown" provisions of § 1129(b). *See*, 11 U.S.C. § 1129(a)(8) and (b). *See, also*, 11 U.S.C. § 1124.

---

**1.** American Charter holds a note executed by Adkisson Village in the principal amount of $1,015,000. Repayment of that note is secured by a mortgage against Adkisson Village's real property and by a security agreement and assignment of rents.

**2.** Of the nine limited partners, three (holding 16 units) voted to accept the Plan, but only one agreed to contribute the additional capital. One limited partner voted to reject the Plan.

**3.** CII also is operating under the provisions of Chapter 11 before this Court. Before any loan can be made to Adkisson Village, it must be approved by the Court in CII's case.

Case law is divided on the issue of whether an impaired non-voting class may be deemed to have accepted a plan. Some courts recognize such "deemed acceptance." *See Heins v. Ruti–Sweetwater (In re Ruti–Sweetwater)*, 836 F.2d 1263 (10th Cir.1988) and *In re Campbell*, 89 B.R. 187 (Bankr.N.D.Fla.1988). Other courts have explicitly rejected this approach and have held that § 1129(a)(8) requires affirmative acceptance by vote for each impaired class, unless a plan proponent proceeds under § 1129(b). *See, In re Friese*, 103 B.R. 90 (Bankr.S.D.N.Y.1989) and *In re Townco Realty, Inc.*, 81 B.R. 707 (Bankr.S.D.Fla. 1987).

Without deciding whether an impaired class which fails to cast any votes may ever be "deemed" to accept a plan, the Court will not find a "deemed acceptance" under the facts of this case. If a Cardinal partnership plan impairs the unsecured claims of tenant security deposit claimants, as does Adkisson Village's Plan, that class of security deposit claimants must affirmatively accept the treatment proposed or the plan proponent must proceed under the "cramdown" provisions of § 1129(b). *See* 11 U.S.C. § 1129(b)(1).

Approximately 280 Cardinal partnership debtors are operating in Chapter 11 before this Court. The proposed plans reviewed by the Court to date in these cases generally treat security deposit claimants in a manner similar to that proposed by Adkisson Village. Generally, where no votes have been cast in that particular class, the plan proponent has orally modified the plan at the hearing on confirmation to pay each claimant the allowed amount of its claim on the earlier of the effective date of the plan or when the deposit is returnable under the contract. Thus, the plan proponent has changed the treatment of the class to render it unimpaired.

As an alternative to unimpairment of the class of non-voting security deposit claim-ants, the proponent may proceed under 11 U.S.C. § 1129(b). If payments to the class are to be delayed, the requirements under § 1129(b)(2)(B)(i) [4] can be met by paying to each claimant class member a discount factor equal to a current market rate of interest for the period for which payment has been delayed.

Adkisson Village has not proposed either to unimpair the non-voting class of security deposit claimants or to modify its Plan to satisfy the requirements of § 1129(b)(2)(B). Therefore, the Plan may not be confirmed because the confirmation test imposed by 11 U.S.C. § 1129(a)(8) has not been met.

### B. The Remaining Requirements Under 11 U.S.C. § 1129(a)

■ The Court has found that the Plan as proposed does not satisfy § 1129(a)(8). Because Adkisson Village will be given an opportunity to further amend its Plan, it is appropriate that the Court consider at this time whether the remaining requirements of § 1129(a) have been met.

The Court may presume that the Plan has been proposed in good faith. Fed. R.Bankr.P. 3020(b)(2). Adkisson Village, through the statements of counsel and the Court's judicial notice, has also established that subsections 4–6, 9–10 and 12–13 of § 1129(a) either are met or are not applicable. Therefore, the only tests for confirmation remaining to be considered are § 1129(a)(7) and (a)(11).

■ Satisfaction of the feasibility test imposed by § 1129(a)(11) requires the plan proponent to offer relevant evidence showing that the proposed plan is workable and that its economic requirements are reasonable under the particular facts of the case. That evidence should compare funds needed for the short-term requirements of the plan with funds on hand. Economic projections to enable the proponent to meet later funding requirements of the plan must be

---

**4.** 11 U.S.C. § 1129(b)(2)(B)(i) provides:
"For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim."

based upon reasonable forecasts that include sufficient resources to meet plan payments, normal capital requirements of the business and some reserve for unanticipated emergencies. The means contemplated to meet the economic projections must be discussed.

Adkisson Village contends that, despite the failure of its limited partners to make additional capital contributions, it can make the payments required by the Plan. A representative of CII testified that CII has agreed to loan Adkisson Village $15,000 in order to help make the initial payments under the Plan. Additionally, American Charter agreed to the use of funds in the reserve accounts established under the Plan to meet any shortfalls in the initial months of plan consummation. The representative of the debtor's general partner further testified that the loan from CII, the debtor's ability to use its reserves and expected income from future operations should enable Adkisson Village to make its Plan payments. The proposed loan has now been included by amendment to the Plan and any subsequent amendment to include nominal extra payments to Class VI security deposit claimants should not seriously affect the Plan's feasibility. Therefore, if the CII loan is approved, the Court will find that Adkisson Village's Plan is feasible.

Adkisson Village also presented evidence to satisfy the "best interests of creditors test" imposed by § 1129(a)(7). That evidence established that if Adkisson Village's real and personal property were liquidated under Chapter 7, the net proceeds from such liquidation would be insufficient to pay holders of claims as much as each holder is receiving under the Plan. Accordingly, the Court finds that the confirmation test of § 1129(a)(7) has been satisfied.

### V. *Conclusion*

Based upon the foregoing, the Court finds that Adkisson Village has failed to show that its impaired class of security deposit claimants has accepted the Plan by the requisite votes. Under the narrow

facts of this case, acceptance by that class by its inaction will not be deemed. Accordingly, the Plan has not met the test imposed by § 1129(a)(8) and confirmation must be, and the same hereby, is denied. Adkisson Village is given ten (10) days from the entry of this order to amend its Plan or to take whatever action it finds appropriate under the circumstances.

IT IS SO ORDERED.