**In re JIM BECK, INC., Debtor.**

**Bankruptcy No. 6–96–00687–11.**

United States Bankruptcy Court,
W.D. Virginia,
Charlottesville Division.

May 6, 1997.

W. Stephen Scott, Charlottesville, VA, for Debtor.

Gregory M. Johnson, Charlottesville, VA, for John W. Ownby, Jr.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The matter before the court for decision is the request by Jim Beck, Inc. (herein the Debtor) for confirmation of its Chapter 11 plan of reorganization pursuant to 11 U.S.C. § 1129(b). There are three issues which require resolution:

1. The Class 6 creditor, Colonial Pacific Leasing has rejected the plan. The issue is whether or not the Debtor has satisfied the provisions of 11 U.S.C. § 1129(b)(2)(A)(iii).[1]

2. Classes 4, 5, 7, 9, and 10 did not cast any ballots in connection with the proposed plan of reorganization. Classes 4 and 5 are treated as secured creditors and the issue is whether or not the Debtor has satisfied 11 U.S.C. § 1129(b)(2)(A)(iii) with respect to these creditors. Class 7 is an unsecured creditor and the issue is whether the Debtor has satisfied 11 U.S.C. § 1129(b)(2)(B)(ii).[2]

3. Class 9 and Class 10 represent the interests of the stockholders in the corporation. Class 9 is the interest of Mr. Ownby, a stockholder in the corporation who is a former officer and director. He is not actively engaged in the Debtor's business enterprise and is in prison. The plan proposes to eliminate Mr. Ownby's equity interest in the Debtor by payment to him of $100.00, repre-

---

1. § 1129(b)(2)(A)(iii) provides that: (2) For purposes of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements: (A) with respect to a class of secured claims, the plan provides (iii) for the realization by such holders of the indubitable equivalent of such claims.

2. § 1129(b)(2)(B)(ii) provides that: (B) with respect to a class of unsecured claims: (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

senting a value in excess of the fair market value of his equity interest in the Debtor. Class 10 is Mr. Cohen's equity interest in the Debtor corporation. Mr. Cohen has been the officer, stockholder, and director of the Debtor who has operated the business throughout the Chapter 11 proceeding. The plan proposes that he will retain his equity in the corporation post confirmation. Ownby objects to confirmation on the ground that it is not fair and equitable to eliminate his 50% equity position and allow Cohen an opportunity to retain his equity.

### Discussion

■ The Debtor appeared on March 20, 1997, in Harrisonburg, Virginia, at the time scheduled for hearing on confirmation of the proposed plan. At that hearing, the Debtor filed its report on voting with accompanying ballots. It also offered evidence in support of confirmation including exhibits and testimony. Mr. Ownby appeared by counsel and argued his objection to confirmation. Other creditors of the Debtor also appeared and were heard. Based upon the evidence presented, the court finds that all of the elements of 11 U.S.C. § 1129(a) have been met by the Debtor with the exception of section 1129(a)(8).[3] Section 1129(a)(8) requires either that each class of creditors designated by the Debtor accept the plan or that there be a finding that the class which has not accepted is not impaired. The Debtor's plan recites that Classes 4, 5, 6, 7, 9, and 10 "are impaired and will be paid in accordance with the provisions set forth herein."

Because the Debtor could not fulfill the requirements of section 1129(a)(8) it moved for confirmation under 11 U.S.C. § 1129(b), the so-called "cram down" provision of the Code. The court will discuss each issue set forth above in the context of section 1129(b).

### A. The Class 6 Claim—Colonial Pacific Leasing

The Class 6 creditor is a leasing company which has a claim in the amount of $16,962.00. The Debtor asserts that this claim is secured by certain computer equipment pursuant to a lease/purchase contract. The treatment of the Class 6 creditor under the plan is as follows:

> The creditor in this class shall be paid the total sum of $100.00 representing the fair market value of its collateral. This creditor will receive one lump sum payment upon confirmation of the plan.

■ At the confirmation hearing, the question was raised as to whether or not the treatment of the Class 6 creditor satisfies section 1129(b)(2)(A). There are three subsections to section 1129(b)(2)(A) and the Debtor argued at confirmation that the Colonial Pacific Leasing treatment would meet the indubitable equivalent test of section 1129(b)(2)(A)(iii). However, the Debtor introduced no evidence as to the value of the computer equipment which it asserts is security for the debt owed to the Class 6 creditor. Also, at the confirmation hearing, the Debtor changed its position and stated that it intended to surrender the collateral and that any deficiency claim would be treated with other unsecured creditors in Class 8 under the plan. Unfortunately for the Debtor, there has been no amendment to the plan to implement what the Debtor indicated it intends to do and there has been no notice to the Class 6 creditor of that proposed altered treatment.[4] Accordingly, the court finds that the Debtor has failed to prove that the plan treatment for the Class 6 creditor satisfies the provisions of 11 U.S.C. § 1129(b)(2)(A).[5]

---

**3.** § 1129(a)(8) provides: (a) the court shall confirm a plan only if all the following requirements are met: (8) with respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan.

**4.** It does appear, however, that an amendment consistent with the Debtor's altered position at confirmation could satisfy the "indubitable equivalent" test. See, In Re Sandy Ridge Devel-

opment Corp., 881 F.2d 1346, 1350 (5th Cir. 1989).

**5.** Upon an examination of the record, the court's ruling with respect to the Class 6 creditor is equally applicable to the Class 5 creditor, AT & T Capital Leasing. On the other hand, a review of the record shows that the Debtor has satisfied the provisions of 11 U.S.C. § 1129(b)(2)(A) with respect to the Class creditor, Toyota Motor Credit.

## B. *The Class 7 Creditor: Unsecured Claim of Alex Gould*

The Debtor classified the unsecured claim of Alex Gould in Class 7, and this is the only creditor in that class. As set forth above, there was no ballot cast by this unsecured creditor. Treatment of the Class 7 creditor in the plan is as follows:

> The creditor in this class will be paid in full during the first quarter in which funds are available for distribution to unsecured non-priority creditors. No interest will be payable on this claim.

11 U.S.C. § 1129(b)(2)(B)(i) states that the plan will be deemed to be fair and equitable if

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

The plan treatment quoted above does not meet this criteria because the Class 7 creditor does not receive any property as of the effective date of the plan and must defer payment without interest.

Therefore, the Debtor needs to satisfy the provisions of section 1129(b)(2)(B)(ii) which is known as the "absolute priority rule." It provides that the debtor meets the fair and equitable test if:

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

In this case, it is clear that Mr. Cohen, in Class 10, will retain his equity interest in the Debtor corporation. His class is junior to that of Class 7. The Debtor attempts to avoid the absolute priority rule by arguing that the Class 7 creditor should be deemed to have accepted the plan by his failure to cast a ballot.

There is a split of authority on this issue and no reported decision in the Fourth Circuit. The Tenth Circuit, in the case of *In Re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988), held that a failure of a class to vote to accept or reject a plan constitutes an acceptance by that class. On the other hand, there are numerous decisions which hold to the contrary.[6] All of these cases hold that the failure of a class to ballot does not result in acceptance. The *Higgins Slacks Co.* case discusses in detail the two lines of reasoning by analyzing the *Sweetwater* decision of the Tenth Circuit and *Townco Realty.* The *Higgins Slacks Co.* case points out that the Tenth Circuit decision in *Sweetwater* ignores Code analysis and is, basically, result orientated:

> We hold that the District Court correctly affirmed the Bankruptcy Court's ruling that Heins' inaction constituted an acceptance of the plan. To hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of a plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge to the plan for the first time. Adoption of the Heins approach would effectively place all reorganization plans at risk in terms of reliance and finality. Adoption of the Heins approach would relieve creditors from taking an active role in protecting their claims.

*Sweetwater,* at 1266–1267.

The *Sweetwater* case arose in the context of an attempt by a creditor to attack confirmation of the plan post confirmation in a hearing which pertained to distribution of proceeds of sale of a piece of property pursuant to the confirmed plan in which the creditor had a security interest. The creditor in *Sweetwater* did not file written objections to the plan nor did the creditor exercise its right to vote on the plan. Further, the creditor did not appear at the confirmation hearings. *Id.* at 1264. At the hearing on the distribution of sales proceeds pursuant to the

---

6. *See In Re Townco Realty, Inc.,* 81 B.R. 707 (Bankr.S.D.Fl.1987); *In Re Friese,* 103 B.R. 90 (Bankr.S.D.N.Y.1989); *In Re M. Long Arabians,* 103 B.R. 211 (9th Cir. BAP1989); *In Re Adkisson Village Apartments of Bradley Co., Ltd.,* 133 B.R. 923 (Bankr.S.D.Ohio 1991); *In Re Higgins Slacks Co.,* 178 B.R. 853 (Bankr.N.D.Ala.1995); *In Re Seventh Street and Beardsley Partnership,* 181 B.R. 426 (Bankr.D.Ariz.1994); *In Re Westwood Plaza Apartments Ltd.,* 192 B.R. 693 (E.D.Texas 1996); *In Re Eagle–Picher Industries, Inc.,* 203 B.R. 256 (S.D.Ohio 1996).

confirmed plan, the bankruptcy court ruled that the creditor was bound by the terms of the plan. Fortunately for the creditor, the time for appealing the confirmation order had not expired and the creditor did, in fact, appeal the confirmation order.[7] *Id.* at 1265.

The *Townco* decision analyzes the failure to vote by looking at the Bankruptcy Code and Bankruptcy Rules:

> The debtor assumes (C.P. No. 37) that the failure to vote constitutes acceptance of the plan. That is not the case. There is no predicate in the statute or the rules for this conclusion. Bankruptcy Rule 3018(c) provides to the contrary:
>
>> "An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to Official Form No. 30."
>
> As contrasted with § 1111(a) which provides that claims are "deemed filed" if scheduled by the debtor unless disputed, contingent or unliquidated, there is no provision deeming a failure to vote as constituting acceptance.

Section 1126(c) provides that a class has accepted a plan if the plan "has been accepted" by the requisite number and amount of the claims in the class. The Senate Committee note to this subsection included the following explanation:

> "Subsection (c) specifies the required amount and number of acceptances for a class of creditors. A class of creditors has accepted a plan if at least two-thirds in amount and more than one-half in number of the allowed claims of the class that are voted are cast in favor of the plan. The amount and number are computed on the basis of claims actually voted for or against the plan, not as under chapter X [former section 501 et seq. of this title] on the basis of the

allowed claims in the class." (Citation omitted.)

*Townco* at 708.

*Higgins Slacks* and other cases which have followed *Townco* proceed on the theory that 11 U.S.C. § 1126(c) requires that a plan be actively accepted and

> If a creditor does not cast a ballot, the amount owed to that creditor and the creditor as a member of the class, is not included in the computation of whether the class accepted the plan.

*Higgins Slacks* at 856.

*Sweetwater* has been criticized by the writers of *Colliers on Bankruptcy* :

> An unfortunate decision was rendered by the Court of Appeals for the Tenth Circuit which can have the effect, if followed, of setting the law on its ear. In *In Re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 17 CBC 2d 1459 (10th Cir.1988), the Court held that the plan could be confirmed even though a class did not vote for or against the plan. The Court concluded that the non-vote constituted an acceptance of the plan and paid no heed to the express language in § 1126 and the clear background of that section. Pursuant to § 1126 the requisite majorities necessary for acceptance of a plan are computed strictly on the basis of votes actually cast and not, as under the former Bankruptcy Act, on the claims filed and allowed. The whole purpose of section 1126 was to require creditors to act one way or the other if they wanted their voices heard. If they were apathetic to the result, such could be shown by not voting at all. In the case of the single creditor class, such apathy, however, would be manifested in an effective rejection by the class since its non-vote is not an acceptance and the requisite majority is not obtained. The Court, however, saw this as stonewalling the debtor in not permitting reorganization. To this there are two simple responses: (1) there is no inherent right to reorganization and the Code should not be manipulated to obtain it, and; (2) the Code itself provides for the

---

**7.** Apparently, the issue of acceptance by a class of non-voting creditors was presented by Debtor's counsel at the confirmation hearing and no party objected to the position taken by Debtor's counsel which was accepted by the court. *See, Sweetwater,* at p. 1264.

contingency of a rejection by permitting confirmation anyway if the plan is non-discriminatory and is fair and equitable. Thus, Congress has provided for the contingency and the courts should not rewrite the statute. *See* 5 *Collier on Bankruptcy,* ¶ 1129.03[8] n. 125, 15th ed. revised.

■ This court finds that the line of cases which hold that failure of a creditor or class to ballot does not result in a default acceptance of the plan is better reasoned and more persuasive than the *Sweetwater* analysis and decision. Thus, the failure of the Class 7 creditor to ballot in this case does not result in acceptance of the plan, and the Debtor cannot satisfy the absolute priority rule.

### C. Treatment of Class 9, Equity Interest of John W. Ownby, Jr.

The plan provides that the equity interest of Ownby will be treated as follows:

> The value of the equity interest held by the creditor in this class is worth $0.00, as determined by the appraisal obtained in accordance with the Stockholders Agreement. The stock of the creditor in this class shall be redeemed by the Debtor pursuant to the terms of the Stockholders Agreement for the sum of $100.00, which shall be paid in cash upon confirmation of the Plan. Upon payment of this sum, the creditor in this class shall have no further equity interest in the Debtor.

■ At confirmation, the Debtor introduced several exhibits which relate to the treatment of the Class 9 interest of Ownby. First, Exhibit 1 is two pieces of correspondence dated August 31, 1995, and August 28, 1995, which indicate that Ownby was disabled at that time and unable to carry out the duties of his employment. Exhibit 2 is a letter to Mr. Cohen at Jim Beck, Inc. dated September 13, 1995, in which Ownby submitted his resignation as an officer and director of Jim Beck, Inc. effective August 31, 1995. Exhibit 3 is a notice of mandatory buy out to Mr. Ownby from Jim Beck, Inc. and references section 2.6 of the Stockholders Agreement concerning purchase of stock in Jim Beck, Inc. from a stockholder as a result of a continuing disability. Exhibit 4 is the Stockholders Agreement which contains the paragraph relevant to the proposed plan treatment:

> 2.6. *Mandatory Buy–Out Disability.* If a Stockholder is deemed to be disabled and is unable to perform his or her duties as an employee of the Corporation for a period of ninety (90) days, as determined by a licensed physician selected by the Corporation, the Corporation shall purchase from the disabled Stockholder and the disabled Stockholder shall sell to the Corporation, all of the disabled Stockholder's shares of the Corporation's stock. The purchase price for the shares purchased under this paragraph shall be determined and paid as set forth in section 2.5.

The Debtor also introduced Exhibit 5 which is a valuation report for Jim Beck, Inc. as of November 30, 1995, which report opined that the capital stock in Jim Beck, Inc. had a zero value. Debtor offered Exhibit 5 through its author, and he confirmed that his opinion as to the value of the capital stock of Jim Beck, Inc. as of the date of the confirmation hearing was the same as reflected in his report dated February 1, 1996. Debtor relies on the paragraph quoted above and the documentation shown as Exhibits 1–5 to argue that the requisite disability for the buyout of Ownby's stock exists as of the date of confirmation. However, the court must read the plain language of the stockholders agreement, Exhibit 4, literally and interpret it strictly. In doing so, it is clear that the disability must be "determined by a licensed physician selected by the Corporation ..." There is no evidence that a licensed physician selected by the corporation determined a disability. In fact, Exhibit 1 clearly reflects that the opinion as to disability came from Mr. Ownby's psychologist. Accordingly, the Debtor cannot rely on the stockholders' buyout agreement as a basis for treatment of Mr. Ownby in Class 9 of the plan.

Nevertheless, the plain language of section 1129(b)(2)(C)(i) does not require the Debtor's reliance on the mandatory stockholders' buyout agreement. That code section states, in relevant part, that the plan can be confirmed if:

> With respect to a class of interests—

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to ... the value of such interest.

■ Exhibit 5 and the testimony of the author of Exhibit 5 that the value of the capital stock in Jim Beck, Inc. as of the date of the confirmation hearing is zero is sufficient to satisfy the provisions of 11 U.S.C. § 1129(b)(2)(C)(i). Accordingly, the Debtor has satisfied this statutory requirement for confirmation with respect to the Class 9 creditor.

■ However, as Ownby, in his objection to confirmation, points out, that does not end the inquiry because the plan must "not discriminate unfairly." 11 U.S.C. § 1129(b)(1). The discrimination between Ownby as a 50% stockholder in Class 9 and Cohen, as the other 50% stockholder, in Class 10 is evident. The issue is whether the discrimination is unfair. *In Re Aztec Co.*, 107 B.R. 585, 590 (Bankr.M.D.Tenn.1989) sets forth a four-part test: 1. Whether there is a reasonable basis for the discrimination; 2. Whether the plan can be confirmed and consummated without the discrimination; 3. Whether the discrimination is proposed in good faith; and 4. The treatment of the classes discriminated against. Other courts have distilled this test into two elements: 1. Whether the proposed discrimination has a reasonable basis; and 2. is necessary for reorganization. *In Re 203 North LaSalle Street Limited Partnership*, 190 B.R. 567, 585–86 (Bankr.N.D.Ill.1995).

■ From the evidence offered at confirmation, it is clear that in the Fall of 1995, Mr. Ownby believed that he was unable to function as an officer and director or employee of the Debtor. *See* Exhibits 1 and 2. Further, it is clear from these proceedings that Mr. Ownby is currently imprisoned and there is no indication that he will be released at any time in the near future. Mr. Ownby, through his counsel, argues that the effect of paying Mr. Ownby the value of his interest in the Debtor and canceling his equity interest in the Debtor will cut off any future right which he will have to a dividend distribution, whereas the retention by Mr. Cohen of his

equity interest as a Class 10 creditor will permit him, upon successful reorganization of the Debtor, to receive dividends from the company. Ownby offered no evidence at the confirmation hearing that any equity holder of the Debtor has a legal right to dividend distribution and there was no evidence offered to show that dividends would be forthcoming in the future. Further, it is clear from the record of this case that it is Mr. Cohen who has been the sole driving force for reorganization of the Debtor. If the Debtor does achieve a confirmed plan and successfully reorganizes, it will be due to Mr. Cohen's efforts. Therefore, there is a rational basis for the Debtor's proposed discrimination between Class 9 and Class 10.

Further, it is clear that there is some division between Mr. Ownby and Mr. Cohen. This is shown in Mr. Ownby's efforts to have this case dismissed prior to confirmation and in the opposing positions that Ownby and Cohen have taken concerning whether Ownby is an officer and director of the Debtor. Thus, while it may be that a plan could be confirmed without the discrimination, this court finds that it would be difficult, if not impossible, to consummate a plan without the discrimination because there is no reason to believe that the preconfirmation disputes between Ownby and Cohen would not continue post-confirmation to the detriment of the business operation.

The court also notes that throughout his appearance in this proceeding, by counsel, Ownby has not shown one bit of concern for reorganization of the Debtor or payment of its creditors. Ownby's sole focus has been to retain a position in the Debtor so that he could have the opportunity to reap the benefit of Cohen's efforts to reorganize the Debtor and some day be in a position to extract money from the Debtor which inures solely to his benefit. With this attitude, consummation of the plan with Ownby as a stockholder could be a problem. The discrimination is in good faith because its motive is to facilitate the paying of creditors while paying a stockholder who has abandoned the enterprise an amount in excess of the fair value of his interest. Accordingly, the court finds that Ownby's objection to confirmation is

without merit and that, with respect to his class, the plan can be confirmed under section 1129(b)(2)(C)(i) of the Code.

## Conclusion

In its present form, the proposed plan of reorganization by Jim Beck, Inc., cannot be confirmed because of the Debtor's failure to meet the statutory requirements of 11 U.S.C. § 1129(b)(2)(A) for confirmation with respect to Class 5 and Class 6. With respect to Class 7, the Debtor cannot satisfy either 11 U.S.C. 1129(b)(2)(B)(i) or the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii). Accordingly, it is

### ORDERED:

That the amended plan of reorganization, as modified by the second amendment to the plan of reorganization of Jim Beck, Inc., be, and it hereby is **DENIED.** Debtor shall have twenty (20) days from the date of docketing of this order to file any amendments to the plan it wishes to file in order to cure the deficiencies set forth above. The Debtor shall give twenty-five (25) days notice of the amendments to all creditors affected thereby of hearing on confirmation, the date and time for which Debtor shall obtain from the Clerk upon filing of any amendment to the plan.