In re WESTWOOD PLAZA
APARTMENTS, LTD.,
Debtor.

DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,
Appellant,

v.

WESTWOOD PLAZA APARTMENTS,
LTD., Appellee.

No. 4:92cv191.

United States District Court,
E.D. Texas,
Sherman Division.

Jan. 23, 1996.

---

Ruth H. Yeager, U.S. Attorney's Office, Tyler, TX, for appellant.

Joyce W. Lindauer, Attorney at Law, Dallas, TX, for appellee.

### Memorandum Opinion and Order
PAUL N. BROWN, District Judge.

This is an appeal by the Department of Housing and Urban Development from the bankruptcy court's decision approving Debtor's Plan of Reorganization. Appellee, Westwood Plaza Apartments, claims on cross-appeal that the bankruptcy court erred in not deeming the Plan accepted by the Appellant.

### Factual Background

In May of 1979, Charles and Margaret McCrory (the "McCrorys") purchased the Westwood Plaza Apartments (the "Property") in San Antonio for $6,000,000. In 1986, the McCrorys secured a loan in the amount of $4,949,200 from DRG Funding Corporation ("DRG"), a qualified lender under HUD's mortgage co-insurance program, Section 223(f) of the National Housing Act. The

McCrorys executed a non-recourse promissory note in the amount of $4,949,200 with interest accruing thereon at the rate of 9.5% per annum.

The loan from DRG was a co-insured mortgage from the Government National Mortgage Association ("GNMA") and was for the rehabilitation of the Property. GNMA guaranteed the mortgage and DRG was required to assign all right, title and interest in the mortgage to GNMA. The note had a thirty-five year payout and was secured by a Deed of Trust creating a first lien on the Property.

Westwood Plaza Apartments, Ltd. ("Westwood") is a Texas limited partnership composed of Charles McCrory and Hastings Management Inc., formed in August of 1991. The McCrorys transferred ownership of the Property to Westwood. Charles McCrory is the general partner and Hastings Management Inc. ("Hastings") is the corporate limited partner of Westwood, with a 1% ownership interest. McCrory's daughter, Mary Catherine Butler, is the sole shareholder and president of Hastings. At that time, HUD held the $4.94 million mortgage note [1] on the Property secured by a first Deed of Trust. Westwood filed its bankruptcy petition on September 9, 1991. Under the bankruptcy plan adopted by the bankruptcy court, HUD was to receive a $3 million dollar promissory note, bearing 7.5% interest and secured by a lien on the Property. The remainder of HUD's claim was classified as unsecured since it was above the $3 million dollar valuation of the Property. This unsecured portion of HUD's claim was to be satisfied by a promissory note bearing 3% interest.

### Standard of Review

▇▇ A bankruptcy court's conclusions of law are subject to plenary review. *Matter of Nobleman*, 968 F.2d 483, 485 n. 5 (5th Cir. 1992), *aff'd*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *In re Delta Towers,*

*Ltd.*, 924 F.2d 74, 76 (5th Cir.1991). Findings of fact by the bankruptcy court will be upheld unless found to be clearly erroneous. *In re Missionary Baptist Foundation, Inc.*, 712 F.2d 206, 209 (5th Cir.1983). A finding of fact is clearly erroneous if the court is "left with the definite and firm conviction that a mistake has been committed." *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1164 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988).

### *Discussion*

#### I. Parties' Contentions on Appeal

HUD presents four issues for review. HUD contends: (1) the Debtor's Plan of Reorganization (the "Plan") does not comply with the requirements of 11 U.S.C. § 1129(b); (2) the bankruptcy court's finding that the chapter 11 petition was filed in good faith is not supported by the evidence; (3) the bankruptcy court's conclusion that the Plan was feasible under 11 U.S.C. § 1129(b) is not supported by the evidence [2]; and (4) the bankruptcy court's valuation of the secured creditor's claim under 11 U.S.C. § 506(a) is not supported by the evidence. Westwood contends on cross-appeal that the bankruptcy court erred in not deeming acceptance of the Plan by HUD. The Court will first address Westwood's issue on cross-appeal and then HUD's issues on appeal.

#### II. The Plan Does Not Meet the Requirements of 11 U.S.C. § 1129(a)

▇▇ The proper standard of proof for a debtor to prove that a reorganization is confirmable under either § 1129(a) or § 1129(b) is the preponderance of the evidence standard. *In Re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993). HUD contends it did not consent to the Plan, thus preventing a consensual reorganization under § 1129(a).

---

1. HUD claims it was owed over $6.1 million on the mortgage note on the date of the filing of the bankruptcy petition.

2. In light of this Court's remanding to the bankruptcy court for reconsideration of a new interest rate on HUD's unsecured claim, this issue is

moot. In other words, whether the Plan is feasible with a 3% interest rate on HUD's unsecured claim does not resolve whether the Plan which contains a higher interest rate over a period of time that may be longer or shorter than the original time frame is feasible.

Westwood claims that it met all of the requirements for confirmation of the Plan under § 1129(a), and that since HUD did not vote on the Plan, HUD should be deemed to have accepted the Plan. The bankruptcy court found HUD had filed an informal ballot against the Plan, although it had not returned an official ballot either voting for or against the Plan. The bankruptcy court reasoned that HUD's objection to the Plan essentially complied with the provisions of Bankruptcy Rule 3018 and Official Form 14, and deemed HUD's objection as an informal ballot against the Plan.

Westwood claims on cross-appeal that HUD should be deemed to have accepted the Plan for several reasons. First, Westwood relies on the disclosure approved by the bankruptcy court, which provided that ballots which were signed and returned, but failed to indicate a preference for acceptance or rejection, would be deemed an acceptance. *Disclosure Statement* p. 5, ¶ I.D.2. Second, HUD did not file a ballot objecting to the plan as required by the bankruptcy rules.

In reference to Westwood's first argument, the disclosure form provided only that a ballot signed and returned with no preference for acceptance or rejection would be deemed an acceptance. In this case, there was *no* ballot returned by HUD, so this section of the disclosure form is inapplicable.

■ In its second argument, Westwood relies on *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988) for the proposition that a class consisting of one creditor who does not vote should be deemed to accept the confirmation plan. Westwood also relies on Bankruptcy Rule 3108 which requires a party to file an acceptance or rejection in writing, and that the acceptance or rejection must conform to the official form. FED. R.BANKR.P. 3018(c). However, as one leading bankruptcy treatise notes, Westwood's arguments overlook the plain language of 11 U.S.C. § 1126 which mandates that "the requisite majorities necessary for the acceptance of a plan are computed strictly on the basis of votes *actually cast or not* ... on the claims filed and allowed." 5 COLLIER ON BANKRUPTCY ¶ 1129.02 (15th ed. 1995) (emphasis added). In addition, the facts of *In re Ruti–Sweetwater, Inc.* are clearly distinguishable since the *Ruti–Sweetwater* creditor did not appear at any hearings on the bankruptcy plan while HUD, the creditor in the instant case, actively participated in the confirmation of the plan. As the Ninth Circuit has noted, "[t]he principle which underlies all equity rulings is embodied in the maxim 'vigilantibus non dormientibus aequitas subvenit,' that is, equity aids the vigilant, not those who slumber on their rights." *Esta Later Charters, Inc. v. Ignacio,* 875 F.2d 234, 239 n. 11 (9th Cir.1989) Although the *Ruti–Sweetwater* creditor may have fallen into a deep hibernating slumber, HUD merely blinked during the ballot process and was fully awake for the remainder of the bankruptcy proceedings.

Therefore, the bankruptcy court's decision to refuse to deem acceptance of the Plan by HUD was proper, and the bankruptcy court should be affirmed on this portion of the order. Since both HUD's secured and unsecured claims were in a class by themselves, the requirements of 11 U.S.C. § 1129(a)(8) which require as a condition to the confirmation of a plan that each class of claims or interests accept a plan or not be impaired under the plan are not met. As such, the Court now looks to determine if confirmation of the Plan was proper under § 1129(b) which allows confirmation of the plan even if the requirements of § 1129(a)(8) are not met.

### III. The Plan Does Not Meet the Requirements of 11 U.S.C. § 1129(b)

#### A. HUD's Contentions

■ HUD contends the Plan violates § 1129(b) because the Plan does not allow HUD as a holder of an unsecured claim to receive or retain property equal to the value of HUD's allowed unsecured claim, nor does the Plan prevent any holder of a junior claim or interest from retaining or receiving anything of value under the Plan on account of the junior claim or interest. 11 U.S.C. § 1129(b)(2)(B). HUD contends neither prong of § 1129(b)(2)(B) has been met.

#### B. HUD Did Not Receive Property Equal to the Value of its Allowed Unsecured Claim

HUD has a $3.1 million unsecured claim against the debtor, and this claim is the sole

claim in Class 4. HUD contends the Plan provides HUD with a promissory note with a present value of only $1,414,931 assuming a discount rate of 9.75%, and does not provide HUD with a note of a value equal to the amount of the unsecured claim. HUD complains that the bankruptcy court erroneously set the interest rate for the unsecured note lower than the interest for HUD's secured note on the Property [3].

The bankruptcy court recognized in a normal situation that an unsecured note would have a higher risk than a secured note, and should receive a higher rate of interest. However, the bankruptcy court found that awarding a higher rate of interest on unsecured claims would be "inconsistent with the basic structure of bankruptcy law."

[redacted] The bankruptcy court's factual findings in weighing the risk of default and assigning an appropriate interest rate are reviewed for "clear error." *In re Briscoe Enterprises, Ltd., II,* 994 F.2d 1160, 1168 (5th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993). The holder of an unsecured claim should receive "property of a value, as of the effective date of the plan, equal to the allowed amount of such claim" under the cramdown provisions of 11 U.S.C. § 1129(b)(2)(B)(i). This language is identical to that contained in § 1129(b)(2)(A)(i)(II), which has been interpreted to require that the total deferred payments have a present value equal to the amount of the secured claim. *In re Bryson Properties, XVIII,* 961 F.2d 496, 500 (4th Cir.), *cert. denied,* 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992).

[redacted] The bankruptcy court refused to perform a present value analysis on the unsecured note since it would be "inconsistent with the basic structure of bankruptcy law." However, this Court notes the basic structure of bankruptcy law is the law as stated in the bankruptcy code. Generalized notions of inequity and unfairness, unless rising to a level of a Constitutional violation, may not "trump" specific statutory provisions. Therefore, the bankruptcy court's finding that three percent is a reasonable interest rate for the unsecured claim of HUD is clearly erroneous.

## IV. The Bankruptcy Court Was Not Clearly Erroneous in Finding that the Debtors Proposed the Plan in Good Faith

[redacted] The bankruptcy court, after listening to a great deal of testimony and having the opportunity to gauge the demeanor of the witnesses, found that the Plan was proposed in good faith. The bankruptcy court's finding of good faith is only reversed if "clearly erroneous." *In re Little Creek Dev. Co. (Little Creek Dev. Co. v. Commonwealth Mort. Corp.),* 779 F.2d 1068, 1073 (5th Cir.1986). After a review of the record, this Court finds that the bankruptcy court was not clearly erroneous in finding good faith.

## V. The Valuation of the Property Was Not Clearly Erroneous

[redacted] HUD contends that the valuation of its secured claim was not in accordance with 11 U.S.C. § 506. The bankruptcy court found that the value of the Property was three million dollars. The bankruptcy court found that a 1990 HUD appraisal of the property, which valued the property at $3,050,000, was the most credible evidence of the property's value. The bankruptcy court also found that the capitalizations of the 1992 projections at an eight percent cap rate supported the three million dollar figure.

HUD contends the evidence does not support this valuation. HUD contends its evidence showed a value of $3,750,000, and that the McCrorys testified to a value of $2,750,000. Further, HUD contends the 1991 tax

3. To the extent that HUD claims that the 7.5% interest rate on the secured note is too low, the Court rejects this argument. The bankruptcy court found that the 7.5% interest rate should be computed by adding the 6.5% prime rate to a 1% risk rate. This rate is strikingly similar to a rate upheld by the Fifth Circuit. *In re Briscoe Enterprises, Ltd., II,* 994 F.2d 1160, 1165 (5th Cir.) (stating that a risk free rate of 6.4% plus a risk premium was proper in June 1993), *cert. denied,* — U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993); 5 Collier on Bankruptcy ¶ 1129.03 n. 45 (15th ed. 1995) (expressly approving referral to the prime rate to determine the "range of prevailing interest rates.").

appraisal valued the Property at $4,000,000 and that the projections of the Property at a cap rate of eight percent would not be three million. The bankruptcy court considered McCrory's testimony and found that it had some probative value, although less than that of an expert appraiser. The bankruptcy court noted that HUD's witness, Mr. Ervin, was not an appraiser, had not visited the property, and did not have direct comparable sales data of apartment complexes. Further, Ervin based his opinion as to the value of the complex on the average price per unit of apartments sold in San Antonio over the prior year. However, the bankruptcy court found there was no evidence which indicated the apartments in the average price per unit were comparable to Westwood in size, age or location. The bankruptcy court further found that the average price per unit of other apartments was not useful in determining the value of the Property without a showing that the units were similar in size, age or location.

The bankruptcy court found in weighing the evidence that there was no evidence that would support a one million dollar increase in value to the amount of the 1991 tax appraisal or that the tax assessor even actually visited the Property. However, the bankruptcy court erred in finding that the projections for net operating income in 1992 at a capitalized rate of eight percent would be $3,000,000. The projection for net operating income ("NOI") in the plan was $374,500, which if capitalized at eight percent would be approximately $4,681,250, and using HUD's capitalization rate of ten percent would be $3,745,-000. Although the bankruptcy court erred in this calculation, this error was harmless since the NOI calculation was not the only evidence upon which the bankruptcy court based its decision.

The bankruptcy court had sufficient evidence to support its finding of the value of the apartment complex. The bankruptcy court found the 1990 appraisal to be the most credible evidence, and only attached some probative value to McCrory's valuation, and did not find the evidence of Ervin to be credible as to the value of the property. The bankruptcy court's factual finding that the value of the Property was $3,000,000 is not clearly erroneous.

### Conclusion

The bankruptcy court's order should be affirmed in all respects except the finding that the plan complied with 11 U.S.C. § 1129(b). This finding should be reversed and this case remanded to the bankruptcy court for proceedings consistent with this Court's Memorandum Opinion and Order.

IT IS SO ORDERED.