**In re PERDIDO MOTEL GROUP, INC., Debtor.**

**Bankruptcy No. 88–05976(11).**

United States Bankruptcy Court, N.D. Alabama.

June 19, 1989.

---

**4.** 796 F.2d 1435, at 1441.

Thomas J. Knight, Anniston, Ala., for debtor.

Robert Rubin, Birmingham, Ala., for Florida Nat. Bank.

## MEMORANDUM OF OPINION ON ORDER DENYING CONFIRMATION OF CHAPTER 11 PLAN

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

*Introduction—*

The above-styled case is pending before the Bankruptcy Court under title 11, chapter 11, United States Code, having been commenced by the debtor's voluntary petition filed on June 22, 1988. This case came before the Court for a hearing on confirmation of the debtor's plan of reorganization on April 4, 1989, at Anniston, Alabama. After consideration of the plan, objections thereto by Florida National Bank, and the oral testimony and other evidence concerning confirmation of the plan, the Court took the debtor's request for confirmation of the plan of reorganization under advisement.

. On June 1, 1989, the Court having concluded that confirmation should be refused, an order denying confirmation of the debtor's plan of reorganization was entered. This memorandum is a recitation of the Court's conclusions in that regard.

There are no findings of fact, as all of the matters on which the Court's decision rests appear of record, *i.e.*, the debtor's amended disclosure statement, the debtor's plan of reorganization, and the debtor's written report to the Court concerning confirmation of the plan.

*Opinion of the Court—*

By the express terms of 11 U.S.C. § 1129(a), the Court is to "confirm a plan only if all of the following requirements are met ...," as set forth therein—but subject to the exception provided by subsection (b). Here, the Court is forbidden to confirm the debtor's plan of reorganization because the following three requirements of section 1129(a) are not met:

(1) The plan complies with the applicable provisions of this title.

.        .        .        .        .

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

.        .        .        .        .

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

*Subsection (a)(1)—*

■ Section 1123 of title 11, United States Code, describes both required attributes or provisions of a plan of reorganization and those which are not mandatory but are permissible, with the mandatory provisions set forth in subsection (a). Part (6) of (a) requires that the plan "provide for the inclusion in the charter of the debtor, if the debtor is a corporation, ... of a provision prohibiting the issuance of nonvoting equity securities...." In this case, the debtor is a corporation, and the plan does not contain such a provision. As a consequence, it cannot be found by the Court that the "plan complies with the applicable provisions of ... title [11]," and the plan fails the test of section 1129(a)(1).

*Subsection (a)(8) —*

The debtor's report to the Court on confirmation of the plan includes the following information:

1. "Class V" is an impaired class of unsecured claims;

2. "Class V" includes the $3,740,000 claim of Florida National Bank, which voted against the debtor's plan; and

3. Claims in "Class V" held by creditors voting to accept the plan total less than ten thousand dollars.

The debtor's confirmation report to the Court blithely ignores the absence of any "request of the proponent of the plan," as provided for in subsection (b) of section 1129, and as blithely asserts that "with respect to each Class of claims that is impaired [the plan] is fair and equitable," as required for a plan to be confirmed pursuant to subsection (b). Not blithely, but for the sake of a resolution of this "fair and equitable" requirement, the Court will pass over the absence of a formal request for confirmation under subsection (b) by the debtor.

In short, section 1129(a)(8) requires that each class of impaired claims accept a plan, in order for the plan to be confirmed by the Court. Here, impaired "Class V" has not "accepted" the plan.[1] The negative vote by Florida National Bank, with a claim in "Class V" of $3,740,000, precludes any serious consideration of whether "two-thirds in amount" of the claims voted in this class were held by creditors who accepted the plan.

Subsection (b) of section 1129, however, contains provisions which—when properly invoked—permit subsection (a)(8) to be disregarded, if the requirements of subsection (b) are met. Thus, it is conceivable that the failure of the debtor's plan to be "accepted" by the creditors holding claims in "Class V" may not be fatal to the plan. This result would require—among other requirements—that the plan be "fair and equitable, with respect to" claims in "Class V."[2]

Subsection (b)(2)(B), in essence, requires that a plan, to be found to be "fair and equitable" with respect to a class of unsecured claims, must provide "that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim . . . ," or the plan must comply with the "absolute priority" requirement set out in part (ii). *Northwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The plan proposed to pay $15,000, divided into 120 monthly installments, on the several million dollars of unsecured claims, precluding any thought that the plan might provide payment of the allowed amounts of the claims in dissenting "Class V."

■ Thus, if the plan were susceptible of confirmation under subsection (b)—notwithstanding the absence of plan acceptance by the impaired "Class V"—the plan would have to meet the "absolute priority" test of § 1129(b)(2)(B)(ii), in order to be found to be "fair and equitable." The plan indirectly fails the "absolute priority" test—but fails it nevertheless.

This corporate debtor was organized for the purpose of building and operating a two-story 100–room motel in the Florida Panhandle, which was built near but not on the Gulf beaches. The construction and equipping of the motel were financed with the proceeds from the sale of $4,400,000 of Florida "industrial development" bonds. Florida National Bank is trustee for the bondholders and holds a first mortgage on or security interest in the motel property— to secure payment of the bonds, payment of which by the debtor is in hopeless default. The large unsecured claim of Florida National Bank represents the excess of the debtor's debt on the bond issue over the value of the motel property. The debtor's corporate stock is solely owned by two brothers.

The plan proposed to leave no property for the two stockholders, by having the debtor transfer all of the debtor's property—practically all of which is the motel property—to Comfort Inn of Perdido, Inc.,

---

1. Broadly speaking, a class of claims has accepted a plan if it has been accepted by creditors "that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors" that voted on the plan. See 11 U.S.C. § 1126(c).

2. 11 U.S.C. § 1129(b)(1).

a corporation organized in September, 1988, in consideration for the promise of the new corporation to perform the financial obligations of the plan. The debtor's two stockholders were neither to have nor obtain any interest in the new corporation. It is on these facts that the debtor represented to the Court that the "absolute priority" test was met by the insolvent debtor's plan and, therefore, was "fair and equitable," as required by section 1129(b).

The debtor's narrative and conclusion take no notice of the fact that the sole stockholders of the new corporation are James L. Deupree, Sr. and Ann H. Deupree, parents of James L. Deupree, Jr. and Charles A. Deupree, the debtor's sole stockholders. Perhaps the family ties of these persons do not expressly appear on the face of the record in this case, but they are a fact which the debtor will not gainsay and of which judicial notice could be taken. The record does show that the new corporation was organized on the basis of $1,000 total authorized capital stock and that the new corporation began "business" with this $1,000 as its paid-in capital. There is no indication of any change in the structure of the new corporation.

The Court's earlier conclusion that the debtor's plan fails the "absolute priority" test "indirectly" should now be clear, as should the reason why the Court rejects the debtor's conclusions on this test. A complete disregard for the principles set out in *Ahlers* and in *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939)[3] would be required to find that this arrangement meets the "absolute priority" test. This arrangement for the stockholders of the

debtor to pass to their parents the property of the estate for a $1,000 guarantee of performance of the plan is, by indirection, a retention of control of the debtor's property, and the Court is unable and unwilling to find that the prospects for future financial gain from control of the motel property as a going business can be sold for $1,000 and called a *quid pro quo.* From all appearances, the debtor's two stockholders would retain an interest in the debtor's property—an appearance not dispelled by the debtor—and for the Court to confirm this plan, if not a shame, would be to "cram down" a sham.

The Court notes that Justice White's opinion in *Ahlers* suggests that Congress may have drawn a shroud over the *quid pro quo* qualification of the "absolute priority" rule.[4] If this plan is to be confirmed, the debtor must convert its case to one under chapter 12 and its pool area to hydroponics, raise not only its rates but tomatoes, and seek confirmation under 11 U.S.C. § 1225.[5]

*Subsection (a)(10) —*

█ In its conclusions as to the qualification of this plan for confirmation, the debtor misapplies subsection (a)(10). The debtor's position is that the tax claims in "Class III" are impaired, that both of the governmental entities having claims in "Class III" have accepted the plan, and, therefore, that the requirement of subsection (a)(10), that "at least one class of claims that is impaired under the plan has accepted the plan," has been met.

The debtor's error lies in its equating the two tax claims in "Class III" with the term "class of claims that is impaired" used in subsection 1129(a)(10).[6]

---

**3.** See also *Northern Pacific R. Co. v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913).

**4.** "Even if Congress meant to retain the *Los Angeles Lumber* exception [308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) ] to the absolute priority rule when it codified the rule in Chapter 11—a proposition that can be debated ...—it is clear that Congress had no intention to expand that exception any further...." 485 U.S. 197, ——, 108 S.Ct. 963, 968.

**5.** The debtor, however, should note that the requirement that a plan must have "been pro-

posed in good faith" is an obstacle to confirmation of this plan, under either section 1129(a)(3) or 1225(a)(3) of title 11.

**6.** Prior to the 1984 amendment 11 U.S.C. § 1129(a)(10) only required that "one class of creditors has accepted the plan," rather than the present requirement that, if a class is impaired, at least one impaired class has accepted. The Bankruptcy Reform Act of 1978, Pub.L. 95–598; Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353.

In *In re Snedaker,* 32 B.R. 29 (Bankr.S. D.Fl.1983), the court agreed with a debtor's contention that a priority tax claim was not impaired, because of the preferred treatment mandated for the claim by subsection 1129(a)(9)(C). The preferred treatment for priority tax claims (described in 11 U.S.C. § 507(a)(7)) is "deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of the claim," provided that the claimant may, of course, agree to a less favorable treatment. This minimum treatment appears quite "unimpairing" when it is contrasted with a proposal to pay less than one percent on common, unsecured claims.

The writer, however, does not agree that a plan which provides the preferred treatment, under subsection (a)(9)(C), to section 507(a)(7) tax claims, leaves the claims "unimpaired."[7] The *Snedaker* holding is based upon an unwarranted inference from Circuit Judge Anderson's opinion in *Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647 (11th Cir.1983). In the context here, "impairment" is not a question of how favorably a claim is treated by the plan but is a statutory question under 11 U.S.C. § 1124. Aside from the provisions of Part 2. (dealing with the reinstatement of a defaulted claim), that section provides that a class of claims is "impaired" unless (1) each claim is to be paid in cash on the effective date of the plan or (2) each creditor's "legal, equitable, and contractual rights" are left "unaltered" by the plan. The installment payment of the tax claims eliminates the cash-payment provision, and it alters the tax claimant's legal rights to levy upon or put tax liens against the debtor's property in pursuit of an earlier payment of the tax claim.

The debtor's position that the tax claims are impaired, although offered the preferential treatment required by section 1129(a)(9)(C), is indisputable, but the gall-ing question for the debtor is whether the tax-priority claims constitute a "class" as that word appears in the term "impaired class" in subsection (a)(10). They do not constitute an "impaired class." This is fatal to the debtor's conclusion that an impaired class has accepted its plan, thereby opening to it an otherwise-closed gate which bars its entrance into the land of greater promise of subsection 1129(b), where it might "cram-down" its plan—its plan to pay less than 1¢ on the dollar upon the claims of Florida National Bank and others in "Class V."

As stated in the beginning of this discussion, section 1123(a) sets out those provisions which must be included in a confirmable plan of reorganization.[8] The first mandatory provision is that the plan: "(1) designate ... classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(7) of [title 11]...."

> Regarding this provision, *Collier* says:
> It is not clear from the language of the statute nor [sic] from its legislative history whether section 1123(a)(1) prohibits the classification of section 507(a)(1), (a)(2) and (a)(7) claims or merely makes such classification permissive. The reason that it is unnecessary to classify section 507(a)(1), (a)(2) and (a)(7) claims is that a majority of a class composed of claimants holding such priority claims cannot bind the minority to treatment at variance with section 1129(a)(9).
>
> · · · ·

*5 Collier on Bankruptcy* ¶ 1123.01[1][b] (15th ed. rel. 17 12/85).

To the Court, however, it is clear enough that a plan may not, in a literal sense, designate a class of claims consisting of tax claims given priority under section 507(a)(7) and thus entitled to the preferential treatment required by section 1129(a)(9)(C). This, at least, is a permissible reading of the language of section

---

7. *But see In re Distrigas Corporation,* 66 B.R. 382 (Bankr.D.Ma.1986) (dictum); *In re Toy & Sports Warehouse, Inc.,* 37 B.R. 141 (Bankr.S.D.N.Y. 1984) (dictum); *cf. In re Polytherm Industries, Inc.,* 33 B.R. 823 (W.D.Wi.1983) (dictum).

8. 11 U.S.C. § 1129(a)(1).

1123(a)(1), and it is by far the most obvious one, when the statute is—as it must be—taken in its context. While section 1123(b)(5) permits in a confirmable plan "... any other appropriate provision not inconsistent with the applicable provisions of [title 11]," this license is neutral as an argument for or against a different interpretation of section 1123(a)(1), and no other permissible provision in subsection (b) gives any hint that section 507(a)(7) tax claims may be classified.

None of this is to say that, for sake of reference and convenience, claims given priority under section 507(a)(7)—or 507(a)(1), 507(a)(2)—cannot be put into categories. The designation of "classes of claims," as section 1123(a)(1) uses that term, is a different matter. The purpose of classification is to state the treatment by the terms of the plan of a particular claim or of associated claims. The "treatment" of the above-mentioned priority claims is fixed by statute, *i.e.*, section 1129(a)(9). The term "classes of claims," as used in the section 1123(a)(1) directive to "designate ... classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(7)," is a "word of art."

A reading of section 1123(a)(1), so as to make permissible a classification of section 507(a)(7) tax claims, creates the evil of having to find—contrary to section 1124—that the tax claims, when given the very favorable treatment required by section 1129(a)(9)(C), are a class which is not impaired. The latter error is forced by such a reading because anyone can see that, if an affirmative vote by such a favored class can satisfy the requirement of subsection (a)(10), for acceptance of the plan by at least one impaired class (when any class is impaired), the provisions of (a)(10) become so lukewarm as to be no requirement at all. If (a)(10) is to have any real role of offering some protection to holders of impaired claims in chapter 11 cases, the acceptance of a plan by holders of highly-favored tax claims does not constitute acceptance by a "class" of impaired claims. A different view ascribes to the Congress an intent to waste paper and printer's ink, which, at least in this context, the Court is not prepared to find.

Courts, of course, should not ignore statutes, including section 1124 of title 11. The irresistible desire to do so is avoided by reading section 1123(a)(1) as an implied prohibition of "classification" (in a literal sense) of the priority claims mentioned there. It is thus, that the Court concludes that the plan also fails the test of section 1129(a)(10).

The order denying confirmation of the debtor's plan of reorganization, therefore, was mandated by the plan's terms and the statute.