### In re DUVAL MANOR ASSOCIATES, Debtor.

#### Bankruptcy No. 95–11844SR.

United States Bankruptcy Court, E.D. Pennsylvania.

June 20, 1996.

See also 191 B.R. 622.

Edward J. DiDonato, DiDonato & Winterhalter, Philadelphia, PA.

Frederic J. Baker, Office of the United States Trustee, Philadelphia, PA.

Jack B. Justice, White & Williams, Philadelphia, PA.

Edward N. Kurland, Philadelphia, PA.

### *OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

Presently before the Court is the request of debtor Duval Manor Associates ("Debtor") for confirmation of its Modified First Amended Plan of Reorganization ("Modified Plan"). A hearing on confirmation of the Modified Plan was held on April 24, 1996. After the conclusion of the hearing the Court convened a teleconference with counsel for both the Debtor and John Hancock Mutual Life Insurance Company ("Hancock"), the Debtor's sole secured creditor and an ardent opponent of both the Debtor's current and previous plan proposals, to further discuss whether approval of the plan by Class II creditors (tenants with claims for the return of security deposits) would satisfy the requirement for "cramdown" confirmation under 11 U.S.C. § 1129(b) that the plan be accepted by at least one class of creditors whose claims are impaired by the plan. 11 U.S.C. § 1129(a)(10). Thereafter, the parties were provided an opportunity of submitting memoranda of law on the issue. For the reasons which follow, the Court concludes that the Modified Plan must be denied confirmation. A status conference will be scheduled at which the Debtor's prospects of being able to submit a plan that is consistent with the views expressed herein will be discussed.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and the subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), 157(b)(2)(A) and (F).

### BACKGROUND

Having only recently considered the Debtor's First Amended Plan of Reorganization in *In re Duval Manor Associates,* 191 B.R. 622 (Bankr.E.D.Pa.1996) ("Prior Opinion"), the

Court is familiar with the facts that underlie this bankruptcy case. Briefly, the facts relevant to the instant discussion can be summed up as follows.

The Debtor is a Pennsylvania limited partnership whose only significant asset is an eight story apartment building and adjacent parking lot located at 6347–51 Greene Street in the Germantown section of Philadelphia (the "Property"). The apartment building houses 168 rental units. The Debtor initially acquired the Property in 1986 for $3,200,000 with financing that was provided by Meridian Bank ("Meridian"). Additional financing provided by Meridian enabled the Debtor to rehabilitate the Property. In 1988, the Meridian indebtedness was refinanced with a loan provided by Hancock. In 1994, however, the refinanced debt was itself refinanced by Hancock after the Debtor began experiencing cash flow problems. Ultimately, the Debtor defaulted on its loan obligations to Hancock. After attempts to negotiate a workout apparently failed, Hancock entered judgment by confession against the Debtor in the Philadelphia Court of Common Pleas on March 7, 1995. Two days later, on March 9, 1995, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code ("Code"). 11 U.S.C. §§ 101–1330. Since the commencement of this case, the Debtor has remained in possession of its assets and has continued in the operation of its business as a debtor-in-possession under Code §§ 1107(a) and 1108.

At an evidentiary hearing held on July 13, 1995, in connection with a motion by Hancock for relief from the automatic stay, expert appraisal testimony established that the Property had a fair market value of $3,450,000 as of May 11, 1995. In the Prior Opinion it was determined that the value of the Property has remained stable since that time. 191 B.R. at 634. Hancock's proof of claim, also admitted into evidence at that hearing, states that as of the petition date, the Debtor owed Hancock the aggregate sum of $6,039,926.14.[1]

On August 23, 1995, the Debtor filed its First Amended Disclosure Statement and First Amended Plan of Reorganization ("Amended Plan"). The Amended Disclosure Statement was approved by Order dated September 8, 1995. Although not expressly stated in the plan, it is implicit that the Debtor's leases with the tenants of its apartment building are to be assumed under Code § 365. A contested hearing on confirmation of the Amended Plan was held on November 16, 1995. Despite overruling Hancock's specific objections, confirmation was nonetheless denied for the reasons articulated in the Prior Opinion. Notably, however, Hancock did not object to the plan on the basis that the votes of Class II creditors could not be counted in the plan voting process for purposes of effecting a cramdown confirmation under Code § 1129(b).

The Debtor filed its Modified Plan on April 1, 1996. A hearing to consider confirmation of the proposal was held on April 24, 1996. No further written objections were interposed by Hancock. At the hearing, however, Hancock renewed some of its earlier objections made in regard to the Amended Plan concerning artificial impairment of Class II claims, feasibility, and purported violations of the absolute priority rule. Evidence was received at the hearing relative to the revised financial projections that the Debtor provided for purposes of considering the feasibility of the Modified Plan. After the conclusion of the hearing, the Court convened a teleconference with counsel for both the Debtor and Hancock for the specific purpose of discussing whether acceptance of the Modified Plan by Class II claimants would satisfy the impaired accepting class requirement of Code § 1129(a)(10) for purposes of effecting a cramdown confirmation under Code § 1129(b)(1). After the conclusion of the teleconference, the parties were provided with the opportunity to submit memoranda of law on the issue.

In its brief, the Debtor contends that the issue of whether or not the tenants comprise an appropriate class for purposes of plan

---

**1.** By Order dated March 6, 1996, however, granting in part and denying in part the Debtor's objection to Hancock's proof of claim, the Court disallowed a portion of the claim in the amount of $508,187.07.

voting is not properly before the Court because the issue was not raised by Hancock, but rather was raised by the Court *sua sponte* after the conclusion of the hearing. The Debtor argues that Hancock's failure to raise the issue constitutes waiver. The Debtor contends, therefore, that the issue is beyond the scope of the case or controversy before the court and should not be decided. Moving beyond this threshold issue, the Debtor posits that the tenants hold Code § 507(a)(6) unsecured priority claims for the return of their security deposits, and that as a distinct class of claim holders they have overwhelmingly voted in favor of the plan. The Debtor argues, *inter alia*, that the tenants will be unfairly discriminated against if their favorable votes are not counted.

Hancock counters first by arguing that contrary to the Debtor's assertions, it did in fact raise the foregoing issue at the confirmation hearing as part of its argument that the tenant class was not actually impaired since the Debtor proposes to assume their leases. Relying on *In re Boston Post Road Limited Partnership*, 21 F.3d 477 (2d Cir.1994), Hancock more pointedly argues in its brief that acceptance of the Modified Plan by the tenant class does not satisfy the Code § 1129(a)(10) requirement that the plan be accepted by at least one class of creditors whose claims are impaired under the plan, because the tenants' pre-petition claims for the return of their security deposits will be converted to Code § 503(b)(1)(A) post-petition administrative claims that are not entitled to vote.

## DISCUSSION

Before the Court is the Debtor's Modified First Amended Plan of Reorganization. Like the Amended Plan which preceded it, claims are classified into seven categories.[2] The Debtor's report of plan voting, relative to the Amended Plan, indicates that only the holders of Class II claims (tenant security deposit claims) have voted in favor of accep-

tance. As discussed previously, the Debtor's only hope of achieving confirmation is through the cramdown provisions of Code § 1129(b). 191 B.R. at 626. In order to achieve this objective the Modified Plan must satisfy the requirement of Code § 1129(a)(10) that "at least one class of claims that is impaired under the plan has accepted the plan...." While the court previously held that the tenants comprise an impaired class, even if only by a *de minimis* or technical impairment, 191 B.R. at 626–29, a potentially dispositive issue arises in this case as to whether the votes of the tenant class satisfy the accepting impaired class requirement of Code 1129(a)(10). Thus, despite the conclusion of the hearing on confirmation on April 24, 1996, the Court convened a teleconference with counsel for the Debtor and Hancock on April 30, 1996, to examine this issue in further detail.

At the outset, the Court must determine whether Hancock raised the above issue either at or before the confirmation hearing, and if not, whether the Court has the authority to raise the issue *sua sponte.* This question provides only momentary pause, however, since a review of the transcript of the hearing reveals that Hancock did, at least verbally, raise the issue in the context of its argument that the tenants could not comprise a proper voting class since the Debtor had proposed to assume their leases. Transcript of hearing of April 24, 1996 ("Transcript"), p. 20. To wit, Hancock argued:

> "The Second Circuit has held ... in a case called *Boston Post Road Limited Partnership*, ... reported at [21 F.3d 477], ... that when a debtor assumes leases, an effort to impair the tenant class so as to get over the [cramdown] hurdle simply doesn't [sic] work *because the tenant class is not even a proper voting class for this purpose,* it is not impaired."

*Id.* (emphasis added).

■ Even assuming *arguendo* that Hancock had failed to the raise the issue, it

---

2. *Class I* is comprised of allowed Code § 503 claims for administrative costs and expenses; *Class II* is comprised of allowed Code § 507(a)(6) unsecured priority claims (tenant security deposit claims); *Class III* is comprised of Code § 507(a)(8) priority tax claims; *Class IV* consists of the allowed secured claim of Hancock

under Code § 506(a); *Class V* is comprised of allowed unsecured claims including the allowed unsecured portion of Hancock's claim; *Class VI* consists of the interests of the limited partners of the Debtor; and *Class VII* consists of the interests of the general partners of the Debtor.

nonetheless would not have been improper for the Court to address it *sua sponte* since it is well established that the bankruptcy court has an independent duty, even in the absence of a valid objection, to find that all of the Code § 1129(a) elements necessary for confirmation have been satisfied before confirmation of a plan may be granted. *See In re Adkisson Village Apts. of Bradley County, Ltd.,* 133 B.R. 923, 924 (Bankr.S.D.Ohio 1991); *In re Richard Buick, Inc.,* 126 B.R. 840, 846 (Bankr.E.D.Pa.1991); *In re Valley Park Group, Inc.,* 96 B.R. 16, 21–22 (Bankr. N.D.N.Y.1989); *In re Future Energy Corp.,* 83 B.R. 470, 482 n. 21 (Bankr.S.D.Ohio 1988). Under no circumstances, therefore, was it improper for the Court to take the initiative in convening the teleconference to require the parties to provide further argument on this potentially dispositive issue. In particular, the Court respectfully rejects the Debtor's proposition that the raising of the issue by the Court amounted to administrative officiousness.

▮ Turning to the substance of the issue of whether an affirmative vote by the tenant class in this case satisfies the accepting impaired class requirement of Code § 1129(a)(10), the Court observes that the Fifth Circuit Court of Appeals, when faced with virtually the same issue in *Matter of Greystone III Joint Venture,* 995 F.2d 1274 (5th Cir.1991), succinctly stated the law as follows:

A debtor in Chapter 11 must either assume or reject its leases with third parties. 11 U.S.C. § 365. If the debtor does neither, the leases continue in effect and the lessees have no provable claim against the bankruptcy estate. *See Matter of Whitcomb & Keller Mortgage Co.,* 715 F.2d 375, 378–79 (7th Cir.1983); *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1352 (9th Cir.1983). Under the Code, only creditors

are entitled to vote on a plan of reorganization. *See* 11 U.S.C. § 1126(c). A party to a lease is considered a "creditor" who is allowed to vote, 11 U.S.C. § 1126(c), only when the party has a claim against the estate that arises from *rejection* of a lease. *In re Perdido Motel Group, Inc.,* 101 B.R. 289, 293–94 (Bankr.N.D.Ala.1989). If, however, the debtor expressly assumes a lease, the lessee has no "claim" against the debtor under § 1126(a). *See* 11 U.S.C. §§ 365(g), 502(g). The rights created by assumption of the lease constitute a postpetition administrative claim under section 503(b)(1)(A) of the Code. *LJC Corp. v. Boyle,* 768 F.2d 1489, 1494 n. 6 (D.C.Cir. 1985). The holder of such a claim is not entitled to vote on a plan of reorganization. 11 U.S.C. § 1126(a); *In re Distrigas Corp.,* 66 B.R. 382, 385–86 (Bankr.D.Mass.1986).

*Matter of Greystone,* 995 F.2d at 1281 (emphasis in original).

▮ The Debtor attempts to distinguish *Greystone,* and its progeny *Boston Post Road,* on the basis that in both of those cases the security deposit monies belonging to the tenants remained in the possession of the debtor both pre- and post-petition, while in this case the Debtor spent the tenants' deposits monies before the case was filed. It is the Debtor's position, therefore, that unlike the tenants in *Greystone* and *Boston Post Road,* whose claims were not impaired or even at risk, the tenants in this case hold tangible pre-petition claims for the return of their deposit monies that are entitled to priority under code § 507(a)(6). This argument, however, fails to take into account that until a lease has been terminated, and possibly for up to thirty days thereafter, a tenant holds only an inchoate right to demand the return of its security deposit. *See* Pennsylvania Landlord and Tenant Code, 68 P.S. 250.512(c).[3] Thus, the only tenants who arguably have choate Code § 507(a)(6) claims

---

3. The Pennsylvania Landlord & Tenant Code, at 68 P.S. § 250.512(c), states as follows:

If the landlord fails to pay the tenant the difference between the sum deposited, including any unpaid interest thereon, and the actual damages to the leasehold premises caused by the tenant within thirty days after termination of the lease or surrender and acceptance of the leasehold premises, the landlord shall be liable in assumpsit to double the amount by which the sum deposited in escrow, including any unpaid interest thereon, exceeds the actual damages to the leasehold premises caused by the tenant as determined by any court of record or court not of record having jurisdiction in civil actions at law. The burden of proof of actual damages caused by the tenant to the leasehold premises shall be on the landlord.

for the return of security deposit monies are those tenants whose leases terminated pre-petition, or were rejected by the Debtor after the case was filed. Tenant creditors such as these, if any, are different from the post-petition tenant creditors in class II whose leases are to be continued in effect post-confirmation and who will continue therefore to hold only inchoate security deposit claims. As *Greystone* makes clear, the debtor's obligations to tenants under assumed leases, or leases that have not been expressly rejected, constitute post-petition administrative claims under Code § 503(b)(1)(A). 995 F.2d at 1281. Such claims are entitled to first priority status under Code § 507(a)(1). *Id.* This preferred treatment is afforded by operation of the Bankruptcy Code itself and is not linked to a favorable vote for a plan by a class of creditors holding security deposit claims. On the contrary, the holders of such claims are not even entitled to vote on a plan.[4] *Id.; Boston Post Road,* 21 F.3d at 484; *accord In re Cantonwood Associates Limited Partnership,* 138 B.R. 648, 656 (Bankr.D.Mass.1992). Thus, since Class II creditors are not entitled to vote on the Modified Plan, the Debtor will have to look elsewhere for an accepting impaired class in order to obtain confirmation by cramdown.[5]

Based on the foregoing conclusions, the Modified Plan can not be confirmed at this juncture due to the lack of an accepting

impaired class of claims. Code §§ 1129(b)(1) and 1129(a)(10). Having so concluded, it is not necessary for the Court to address the other issues raised by Hancock at the hearing.[6]

---

4. The Court is mindful that in denying Hancock's objection to the artificial impairment of Class II claims in the Prior Opinion, it went on to hold, *inter alia,* that the Amended Plan would "not be deemed to fail for want of the requisite accepting impaired class." 191 B.R. at 629. The objection there, however, was not to whether the favorable vote of Class II claims could satisfy the requirements of 1129(a)(10), but rather, was only to the artificial impairment of the tenants' claims comprising that class. To avoid the potential for any confusion on this issue in the future, the Court clarifies herein the issue decided in the Prior Opinion, and further holds that to the extent that the Prior Opinion is inconsistent with the views expressed here on the issue of whether a class of claims comprised of tenants whose leases are assumed by the debtor can vote on a plan, this opinion shall control. In short, they can not. *E.g. Matter of Greystone,* 995 F.2d at 1281. The Prior Opinion, therefore, is modified to the extent that it is inconsistent with the conclusions reached herein.

5. In the Prior Opinion the Court noted that the Amended Plan also impairs both Class III (tax claims entitled to priority under Code § 507(a)(8)) and Class V claims (general unsecured claims (Class V). 191 B.R. at 629 n. 2. While no votes were cast by the tax claimants, the Debtor advised the Court at the disclosure statement hearing that it anticipated securing an accepting vote in this class. In the interest of promoting judicial economy, however, the Debtor is directed to this Court's recent opinion in *In re Curtis Center Limited Partnership,* 195 B.R. 631 (Bankr.E.D.Pa.1996), another single asset realty case, in which it held, *inter alia,* that a class comprised of Code § 507(a)(8) pre-petition tax claims can not serve as an accepting impaired class for purposes of Code § 1129(a)(10). *Id.* at 639.

6. Hancock also objected, *inter alia,* to the Debtor's proposed use of certain rent collaterals to pay Class I Code § 503 administrative expense claims consisting exclusively, it seems, of fees and expenses owed to the Debtor's counsel.