**In re CENTER APARTMENTS, LTD., et al., Debtor–in–Possession.**

No. 01–15897.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Nov. 28, 2001.

Mary A. DeFalaise, Cincinnati, OH, for debtor.

Susan Bailey–Newell, CMHA, Eric French, Cincinnati, OH, Glenn Gillett, Washington, DC, Robert A. Goering, Richard M. Haines, W. Timothy Miller, Louis F. Solimine, Cincinnati, OH, Jeffrey V. Laurito, Springboro, OH, for creditor.

## MEMORANDUM DECISION

JEFFERY P. HOPKINS, Bankruptcy Judge.

This matter is before the Court on the Motion of Certain Tenants for Order Directing Formation of Official Tenants' Committee ("Motion") (Doc. 49) filed on August 24, 2001. By the Motion, seven tenants of the Debtors seek the entry of an order directing the United States Trustee ("UST") to appoint a tenants' committee pursuant to 11 U.S.C. § 1102(a)(2). The Motion is opposed by the Debtors, the UST and the United States Department of Housing and Urban Development ("HUD"). In reaching its determinations, the Court considered the four affidavits proffered by the tenants and the oral arguments and briefs of counsel. For the following reasons, the Motion will be **DENIED**.

There are essentially two issues before the Court. The threshold issue is whether the tenants of the Debtors' apartments are creditors of the Debtors. If the tenants are not creditors, they clearly cannot serve on an additional committee of "creditors." If they are creditors, the Court must determine whether, in the exercise of its discretion, it would be appropriate in this case to appoint an additional committee.

### I

The tenants contend that they hold "claims" against the Debtors as that term is broadly defined under the Bankruptcy Code[1] for one or more of the following reasons: (1) rejection of leases; (2) maintenance; (3) overpayment of rent; (4) fire damage; (5) wrongful evictions; (6) enhanced rental vouchers; (7) right to remain in apartments; and (8) security deposits. The record in this case, established by the four affidavits proffered by the tenants, does not support the view that the tenants possess claims against the Debtors on any of the proffered grounds. At the hearing on this matter, the UST effectively refuted the assertion that any of the four affiants currently hold claims against the Debtors. Specifically, the UST noted that: (1) Ms. Chapman, if anything, holds a claim against the Cincinnati Metropolitan Housing Authority ("CMHA"); (2) Ms. Hart, if anything, holds a claim against South Warwick Apartments-a non-debtor entity; (3) Ms. Walker, if anything, holds a claim against the CMHA; and (4) Ms. Walsh's affidavit is not properly before the Court because it is unsworn. The UST's argument,

---

1. Section 101(5) defines claim broadly as:

   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

which the Court finds persuasive, went unchallenged by the attorneys representing the tenants.

Notwithstanding the failure of proof already discussed, the Court is also not convinced that the tenants in these cases possess a claim against the Debtors solely by virtue of the payment of their security deposits. The case of *In re Cold Harbor Assocs., L.P.,* 204 B.R. 904 (Bankr.E.D.Va. 1997) addresses the issue of whether tenants are creditors of a debtor-landlord simply by virtue of their security deposits. The *Cold Harbor* court concluded that the tenants in that case were not creditors because, under applicable state law, they held a full ownership interest in the deposits as opposed to a right to payment.[2] *Id.* at 913. The parties have not cited nor is this Court aware of any state or federal precedent defining the ownership rights to a security deposit under Ohio law. Therefore, the Court must look to cases from other states interpreting similar laws to determine how Ohio courts would rule on the issue.

Ohio Rev.Code § 5321.16 sets forth the procedures governing the payment and treatment of security deposits. Ohio Rev. Code § 5321.16, in application and effect, resembles the state statutes analyzed by the courts in *Cold Harbor, Wayco* and *Empire Financial Services. See supra* note 2. Moreover, Section 5321.16(A) requires the payment of interest on deposits in excess of one month's rent. In this context, a respected authority has stated that, "[a] provision for the landlord's payment of interest on [a security] deposit until it is applied to the payment of rent or retained as liquidated damages for a default by the tenant indicates that title to the deposit remains in the tenant until it is properly applied." 16A Am.Jur. Pl. & Pr. *Landlord and Tenant* § 333 (2000). Given that the tenants have not cited any authority that would lead to a contrary conclusion, the Court is of the opinion that an Ohio court faced with this same issue and having to interpret the Ohio statute would find that the tenants possess title to the security deposits. Consequently, under *Cold Harbor* and the cases cited therein, the security deposits do not make the tenants creditors of the Debtors in these cases.[3]

**2.** The *Cold Harbor* decision further noted:
Other bankruptcy courts confronted with similar circumstances have concluded that a tenant is not a creditor solely due to the existence of his security deposit. *In the Matter of Wayco, Inc.,* 947 F.2d 1330 (7th Cir.1991) (trustee not entitled to security deposit because title to money remains in tenant); *Empire Financial Services, Inc. v. Gingold,* 170 B.R. 736 (Bkrtcy.N.D.Ga. 1993) (security deposits not part of the debtor's estate due to Georgia statute requiring deposit to be held in trust for tenant). Tenants have been held to hold no claim of any kind, and have even been precluded from voting in the Chapter 11 plan confirmation process. "A party to a lease is considered a 'creditor' who is allowed to vote ... only when the party has a claim against the estate that arises from rejection of a lease." *In the Matter of Greystone III Joint Venture,* 995 F.2d 1274, 1281 (5th Cir.1991) (emphasis in original); *In re Boston Post Road Ltd. Partnership,* 21 F.3d 477 (2nd Cir.1994); *In re Duval Manor Associates,* 198 B.R. 94 (Bankr.E.D.Pa. 1996).

**3.** In addition, the Court is not persuaded that the HUD statutes and regulations cited by counsel entitles the tenants to any enforceable right to remain in the rental units indeterminately. 42 U.S.C. § 1437(1)(B). However, that is not an issue that must be decided at this time. Even if the tenants possess such a right, that right has not yet been violated. Moreover, a sale of the Debtors' assets pursuant to § 363 or through a confirmed plan would not necessarily violate the alleged right if the purchaser continues to honor the leases. Within this context, only if the leases are rejected by the Debtors will the tenants have claims. *See* § 365(h).

■ The record established here leads this Court to the firm conclusion that none of the tenants whose testimony was proffered are creditors of the Debtors at this stage in the proceedings and thus none are authorized by the Bankruptcy Code to serve on any committee of creditors.[4] To the extent that the decision *In re Franklin Park Dev. I*, 64 B.R. 253 (Bankr.D.Mass. 1986) holds otherwise, we reject the reasoning in that case. At best, the tenants in these cases can and should be regarded as important customers of the Debtors. However, as Judge Spector noted in *Dow Corning*, customers are not entitled to their own committee.

> The Union has not shown that it or any of its members or retirees even possess claims against the estate. The Union's position is akin to that of a customer who fears that the Debtor might not perform a pre-petition supply contract. Of course, if the Debtor rejects any of its executory contractual obligations to the Union or its members or retirees, they will then have claims. The Union can then argue that the U/S CC does not adequately represent their interests.

At present, however, the best way to describe the Union's interest is in not becoming a creditor.

To the extent that the Union 'actually holds some type of actual claim—a point it was never able to establish—it certainly is capable of asserting it on its own.

*In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr.E.D.Mich.1996), *rev'd on other grounds*, 212 B.R. 258 (E.D.Mich.1997). Finally, we note that the tenants' inability to serve on a committee does not equate to their having no say in these proceedings. Section 1109(b) allows any party in interest, including the tenants and their neighbors affected by these bankruptcies, to raise and be heard on any issue. Nothing precludes these seven tenants or any of the other residents served by the Debtors from objecting to the sale of any of the apartments under § 363 or from being heard on any other issue that arises.[5]

## II

■ Regardless of the tenants' status as creditors, this case does not lend itself to the appointment of an additional committee. Congress primarily intended

**4.** The Court's order denying the Motion will be without prejudice to the filing of a subsequent motion supported by proof of a claim held by a class of tenants. Nonetheless, the facts underlying a subsequent motion must also reflect circumstances for which § 1102(a)(2) was intended. *See infra* Section II.

**5.** Under § 330 professionals appointed by the court to represent committees are entitled to reasonable compensation and reimbursement of expenses. The attorneys of Frost Brown Todd (FBT) have performed a commendable service to the individual tenants they have represented without any compensation. FBT, and in particular Edmund J. Adams and Douglas J. Lutz, prominent lawyers in this community, deserve special recognition for fulfilling a long-standing tradition of the bar best expressed in Ethical Consideration 2–24 which reads, in part, as follows:

> Historically, the need for legal services of those unable to pay reasonable fees has been met in part by lawyers who donated their services or accepted court appointments on behalf of such individuals. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer.... Every lawyer should support all proper efforts to meet this need for legal services.

§ 1102(a)(2) to be used in situations where a debtor discriminates between classes of creditors or equity holders. *See* H.R.Rep. No. 95–595, at 401 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6357 ("The provision will be relied upon in cases in which the debtor proposes to affect several classes of debt or equity holders under the plan[.]"); *see also In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212 (Bankr.S.D.N.Y.1990) ("chief concern [behind § 1102(a)(2) ] is whether it appears that different classes of debt and equity holders may be treated differently under a plan and need representation through appointment of additional committees."); 4 Norton Bankr.L. & Prac.2d § 78:6 (2001) ("Courts should be reluctant to appoint an additional committee merely to represent factions of a particular class[.]").

There has been no suggestion that allowed claims of tenants, if any, will be classified differently from other unsecured debt. The schedules reflect that there is, on average, less than $150,000 of unsecured debt in each case—not exactly the kind of debt identified with complex cases involving competing classifications where courts are more likely to appoint additional committees. Moreover, the Trustee has assured the Court that tenants holding allowed claims will be considered for appointment to the official committee of unsecured creditors. Given the relatively small amount of unsecured debt in these cases and the apparent lack of interest by creditors to serve on a committee[6], tenants with allowed claims stand a far better chance of obtaining a voice on the official committee than the typical case.

### III

For the foregoing reasons, the Motion of Certain Tenants for Order Directing For-

mation of Official Tenants' Committee will be **DENIED**. An order to this effect will be entered.

---

6. None of the Debtors' trade creditors have brought a motion under Rule 2020 requesting that the UST appoint a committee pursuant to § 1102(a)(1) despite the fact that these cases have been pending since August 13, 2001, approximately three months.