**In re DUVAL MANOR ASSOCIATES, Debtor.**

**Civil Action No. 96–CV–5303.**

United States District Court, E.D. Pennsylvania.

Nov. 26, 1996.

---

Edward J. Di Donato, Di Donato and Winterhalter, Philadelphia, PA, for Duval Manor Associates.

Jack B. Justice, White and Williams, Philadelphia, PA, for John Hancock Mutual Life Insurance Company.

John Stonitsch, U.S. Trustee, Philadelphia, PA, Pro Se.

### MEMORANDUM

RENDELL, District Judge.

Debtor has brought this appeal from the bankruptcy court's denial of confirmation in a single-asset chapter 11 case. The procedural posture in the court below was unusual, and bears recounting.

The debtor is a Pennsylvania limited partnership whose only significant asset is an eight-story apartment building and adjacent parking lot located at 6347–51 Greene Street in the Germantown section of Philadelphia. After unsuccessful attempts by the debtor to renegotiate the mortgage on the property, held by John Hancock Mutual Life Insurance Company ("Hancock"), Hancock entered judgment by confession against the debtor on March 7, 1995. Two days later, on March 9, 1995, the debtor filed a petition for relief under chapter 11 of the United States Bankruptcy Code ("Code"). The debtor filed a First Amended Disclosure Statement and First Amended Plan of Reorganization on August 23, 1995. A confirmation hearing was held on November 16, 1995, and on January 30, 1996, the bankruptcy judge issued an opinion which overruled Hancock's objections to the plan, but denied confirmation nonetheless, based upon the need for "relatively minor amendment" to deal with various aspects of John Hancock's claims ("Prior Opinion").

Hancock raised several objections to confirmation, but its principal argument in opposition to confirmation was that the only class of creditors to vote in favor of the plan, namely, Class II, holding security deposit claims, did not constitute an "impaired" class. If claims of the class were not impaired by the Plan, their votes could be not be counted for purposes of effecting a cramdown under

§ 1129(a)(10) of the Code.[1]

The debtor filed a Modified First Amended Plan on April 1, 1996 (the "Plan"), to remedy the few problems noted by the court in the Prior Opinion. A hearing to consider confirmation of the Plan was held on April 24, 1996. Hancock renewed the objections previously made in regard to the initial plan, arguing, among other things, "the tenant class is not even a proper voting class for this purpose, it is not impaired." (April 24, 1996 transcript, p. 20)

Thereafter, the bankruptcy court convened a phone conference with counsel for the debtor and Hancock to discuss whether the Class II claimants did satisfy the impaired accepting class requirement, focusing, however, on whether they were an appropriate class for purposes of plan voting, not on the issue of impairment under the Plan as was previously specifically addressed and argued by Hancock.

The court permitted the parties to submit memoranda. The debtor argued not only that the Class II claimants were an appropriate voting class, but, also, that Hancock had waived any objection based on the appropriateness of the class, and that the court should not raise the issue or deny confirmation based on an issue not raised by Hancock. The court filed an Opinion and Order on June 21, 1996, denying confirmation and holding, first, that whether or not the appropriateness of the class had been raised by Hancock, it was appropriate for the court to address this issue, and, second, that Class II claims were not entitled to vote on the Plan, since they were administrative claims. Since Class II was the only impaired class to have voted in favor of the Plan, the Plan failed to fulfill the requirements of § 1129(a)(10) of the Code, and confirmation was denied. It is

from this ruling that the debtor has filed the instant appeal.[2]

## ISSUES PRESENTED

The debtor frames the issues before me in its brief as follows:

(1) The issue of whether or not tenants comprised an appropriate class for purposes of plan voting was waived; and

(2) The class of security deposit claimants is a proper class under the facts herein.

## STANDARD

■ In reviewing decisions of the bankruptcy court, the district court applies a clearly erroneous standard to findings of fact, and conducts plenary review of conclusions of law. *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992).

## DISCUSSION

1. *Was the issue of whether or not Class II was an appropriate class for purposes of plan voting properly addressed by the bankruptcy court.*

■ The debtor frames this issue as one of waiver by Hancock. Hancock had specifically argued—and the court rejected its argument—that these claims were not truly impaired, but it was only after briefing and the confirmation hearing that the court initiated the discussion of whether the security deposit claims of tenants was a class of claims entitled to vote on a plan. In his opinion, the bankruptcy judge discussed the court's ability to raise this issue and determined that, as noted above, whether or not this issue had been raised in argument by Hancock, it was not improper for the court to raise this issue *sua sponte.* I could not agree more. As noted by the bankruptcy

1. Section 1129(a)(10) contains one of the 13 enumerated requirements for confirmation of a plan. It provides that at least one impaired class of claims must have accepted the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10). Cramdown of a plan can occur, that is, the plan can be approved over the rejection by a number of classes of claims, if *one* class *has* accepted and the other specific requirements of § 1129(a) are met.

2. Hancock previously appealed from the Prior Opinion. Thereafter, when the June 21, 1996 opinion denying confirmation was issued, and this appeal was filed by the debtor, I inquired of the parties as to whether the previous appeal was moot. On August 19, 1996, Hancock advised me that insofar as the Prior Opinion denied its request for relief from the automatic stay, the appeal was not moot. That appeal is, therefore, still before me, and will be addressed as soon as the instant issue regarding the propriety of the vote of the Class II claims is fully resolved.

judge, the bankruptcy court had a duty to make a finding on the issue of whether § 1129(a)(10) had been satisfied. Since all of the impaired classes set forth in the Plan other than Class II had rejected the Plan, the debtor needed the vote of Class II claims in order to satisfy the requirements of § 1129(a)(10). In fact, the bankruptcy judge could have raised this issue for the first time in his opinion without even convening a call or notifying the parties of his thinking in this regard. Notwithstanding the debtor's argument to the contrary, I find that it is not only appropriate, but required by the language of § 1129, that the bankruptcy judge act as an "inquisitor" when the subject of the inquiry is the compliance of the plan with each of the specific requirements of § 1129 of the Code. Objections need not have been raised where, as here, the judge had an independent duty to determine that these statutory requirements had been met. *See In re Adkisson Village Apts. of Bradley County, Ltd.*, 133 B.R. 923, 924 (Bankr.S.D.Ohio 1991); *In re Richard Buick, Inc.*, 126 B.R. 840, 846 (Bankr.E.D.Pa.1991). The lower court's ruling was correct in this regard.

2. *Did the tenants' security deposit claims constitute a class of claims entitled to vote on the Plan?*

Turning to the issue of whether an affirmative vote by the tenant class based on their security deposit claims satisfies the accepting impaired class requirement of the Code, namely, § 1129(a)(10), the analysis must begin with a consideration of the character of the claims classified by the Debtor as Class II.

The bankruptcy judge concluded that the debtor had implicitly assumed its leases with the tenants of its apartment building and, therefore, based upon reasoning contained in *In the Matter of Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir.1992), the tenants of the debtor had post-petition cost of administration claims under § 503(b)(1)(A) for the return of their security deposits. He concluded, further, that these administrative claims are not entitled to vote on a plan, and, therefore, the debtors' plan failed to comply

with § 1129, since no impaired class entitled to vote had voted in favor of the plan.

I agree with the bankruptcy judge that if the tenants' security deposit claims are § 503(b)(1)(A) claims, they are not entitled to vote. However, the claims in Class II are designated as § 507(a)(6) claims. There may be two ways to analyze the tenants' security deposit claims—either as claims arising out of the executory contracts between the debtor and tenant, or as claims under § 507(a)(6) of the Code as designated by the Debtor. The bankruptcy court ventured along the first path of analysis, concluding that the tenants security deposit claims were post-petition administrative claims entitled to first priority status under § 507(a)(1). However, I find that in this reasoning and reaching this conclusion, the bankruptcy court chose the wrong path.

The distinguishing feature of the Plan is that the Debtor has *classified* a class of claims as § 507(a)(6) claims. The Plan is the source of the debtor's classification and sets the parameters for inclusion in the class:

2. *Class II.* Shall consist of all allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(6).

There is no class in the Plan made up of tenant's security deposit claims; nothing is said in the Plan as to which claims fit within Class II and can vote, but presumably they can include only those that pass muster as § 507(a)(6) claims, defined as including:

(6) Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

The importance of following this analysis is made apparent by the fact that, unlike administrative claims, § 507(a)(6) claims are to be grouped into a *class* under the statutory scheme, and this class of claims is accorded specific treatment under § 1129(a)(9) in or-

**46**

der for the plan to be confirmed.[3] While other courts have distinguished "claims" under § 507(a)(1) and (a)(2) as not intended to be voted as classes, a reading of § 1129(a)(9) reveals that not to be the case with respect to § 507(a)(6). Rather, the Code speaks specifically of the implications of class acceptance or rejection. 11 U.S.C. § 1129(a)(9). Accordingly, I cannot conclude that the vote of a proper class of 507(a)(6) claims is not to be taken into account.

The issue, therefore, is whether the claims that voted in Class II were § 507(a)(6) claims. This issue was not specifically addressed in the court below, nor do I believe the record is sufficient for me to speculate in that regard.[4]

Since I read the bankruptcy court's opinion as concluding that the claims are administrative claims not entitled to vote, without addressing whether or not the claims that voted do or do not fit within the class of claims entitled to vote, as designated by the debtor, namely § 507(a)(6) claims, I will reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**3.** The bankruptcy court analysis was premised upon the conclusion that, under *Greystone, supra*, the claims were post-petition administrative claims under § 503(b)(1)(A), entitled to priority status under § 507(a)(1), and not entitled to vote on a plan, citing *In re Boston Post Road Limited*, 21 F.3d 477, 484 (2d Cir.1994), and *In re Cantonwood Associates Limited Partnership*, 138 B.R. 648, 656 (Bankr.D.Mass.1992). The difficulty with this analysis, however, is that these cases note the unique status of claims under § 1129(a)(9)(A), because § 507(a)(1) and § 507(a)(2) claims are treated as *claims* that are to be paid in full. These claims are distinguished because they are not referred to as *classes* of claims. However, under § 1129(a)(9)(B), § 507(a)(6) claims specifically *are* dealt with as *classes*.

**4.** The language of § 507(a)(6) would appear to require that each claim must be an unsecured claim for the return of deposit money for services not delivered or provided. Nothing in the record delineates the precise character of the claims that voted in Class II. If the claims that voted are *not* properly § 507(a)(6) claims, it matters little exactly what type of claims they are, because their votes count as proper Class II votes only if they are § 507(a)(6) claims. There is at least one case in this jurisdiction that approves of the classification of tenant security deposit claims under § 507(a)(6). *See In re River Village Associates*, 161 B.R. 127 (Bankr.E.D.Pa.1993).